IN THE MATTER OF THE ESTATE OF JOHN S. DOE.

[No. 14,365; decided November 27, 1905.]

Wills—Construction as to Intestacy.—Of the two modes of interpreting a will, that is to be preferred which will prevent a total intestacy; but if the legal effect of the expressed intent of a testator is intestacy, it will be presumed that he designed that result.

Construction of Statute Adopted from Another State.—The rule that a statute adopted from another state will be given the construction placed upon it by the courts of that state prior to its adoption, is not absolute, especially where there has been a single

decision which has since been questioned or repudiated in the foreign state.

**Trusts—Construction as to Duration.**—In determining the duration of a trust term, the inherent character of the trust and its essential limitations may form an element in the construction to be given to the language creating it.

**Trusts—On Whose Lives Term may be Limited.**—A trust created under subdivision 3 of section 857 of the Code of Civil Procedure, to receive the rents and profits of real property, and apply them to the use of designated beneficiaries, may be limited on lives of persons other than the beneficiaries.

**Trusts—Duration Limited by Purposes.**—A trust in real property to pay the rents and profits thereof to designated beneficiaries cannot endure longer than the lives of the beneficiaries, where, upon the assumption that they will outlive the trusts, the lives of the latter are made the measure of the trust.

**Trusts—Whether Bare and Void.**—A devise ''in trust'' for others is not invalid as a bare trust, when it imposes on the trustee the duty of paying the rents and profits of the property to the beneficiaries.

**Trusts—Effect of Partial Invalidity.**—An invalid provision in a trust, which is not an integral or essential part of the trust scheme, will not necessarily vitiate the other provisions.

**Trusts—Unlawful Accumulations.**—A direction to trustees to pay taxes, street assessments, and other charges and expenses incurred in improvements, out of the income of the trust estate, does not provide for an unlawful accumulation.

**Trusts—Unlawful Accumulations.**—A provision in a trust for retaining the income of the estate and paying it over to the beneficiaries annually is not void.

**Wills—Devise on Termination of Trust.**—A devise to the widow and daughter of the testator, one-half to the daughter absolutely and the other half to the widow for life with remainder to the daughter, is valid, regardless of the validity of a devise in trust of an intermediate or precedent estate.

**Wills—Creation of Vested Remainder.**—The devise in this case to the widow and daughter of the testator upon the ''termination of the trust'' is held to be a devise of a vested remainder, postponed in possession merely.

**Trusts—Purpose and Validity.**—If a testator, after making specific gifts, devises the residue of his estate to trustees ''for'' certain beneficiaries, and elsewhere in the will provides that the executors, who are also named as trustees of the trust, shall pay to the persons designated as those ''for'' whom the property is held, a specified sum per month, the payment of that sum constitutes a trust pur-

pose of the trust of the residuum, and the latter is not void as a naked trust.

**Wills—Acceleration of Devise When Trust Invalid.**—If a devise is limited to take effect upon the termination of a trust and the trust proves invalid, the devisees come immediately into their own.

**Trusts—Liberal Interpretation of Statutes.**—Provisions of the codes in respect to testamentary trusts should be construed liberally.

Application for final distribution.

Garret W. McEnerney and Heller & Powers, for the surviving executor and trustee, Bartlett Doe, and for other contingent devisees, applicants.

The trust of specific property is not created to endure for an illegal period. If the wife and daughter predecease the trustees, the trust terminates on the death of the beneficiaries: Civ. Code, secs. 871, 2279; Crooke v. County of Kings, 97 N. Y. 421. Even if a trust were dependent upon the lives of the trustees, the trust would be valid: Bailey v. Bailey, 97 N. Y. 467; Crooke v. County of Kings, 97 N. Y. 421, both cases overruling Downing v. Marshall, 23 N. Y. 366, 377, 80 Am. Dec. 290. The construction given a statute at the time of its adoption from a foreign state will not be followed where that construction has afterward been held erroneous: Goble v. Simeral, 67 Neb. 276, 93 N. W. 236; Whitney v. Fox, 166 U. S. 637, 17 Sup. Ct. 713, 41 L. Ed. 1145; Iron Works v. White, 31 Colo. 82, 71 Pac. 384. The case is distinguishable from that of Wittfield v. Forster (124 Cal. 418, 57 Pac. 219), since trust purposes are here declared. If there be directions for an unlawful accumulation of income, this does not invalidate the trust of specific property: Civ. Code, sec. 733. A provision for the annual payment of income is not void as an unlawful accumulation: Estate of Steele, 124 Cal. 533, 541, 57 Pac. 564; In re Howell's Estate, 180 Pa. 515, 520, 37 Atl. 181; Livingstone v. Tucker, 107 N. Y. 549, 552, 14 N. E. 443. Thus annuities are valid under the New York law corresponding to our code section: Alvord v. Sherwood, 21 Misc. Rep. 354, 47 N. Y. Supp. 749; Garvey v. Trust Co., 29 App. Div. 513, 52 N. Y. Supp. 260; Nichols v. Nichols, 42 Misc. Rep. 381, 86 N. Y.

Supp. 719; In re Tracy, 87 App. Div. 215, 83 N. Y. Supp. 1049; Provost v. Provost, 70 N. Y. 144; Townshend v. Frommer, 125 N. Y. 446, 26 N. E. 805; In re Foster's Estate, 37 Misc. Rep. 581, 75 N. Y. Supp. 1067; Stewart v. Phelps, 71 App. Div. 91, 75 N. Y. Supp. 526; Salisbury v. Slade, 160 N. Y. 278, 54 N. E. 741; Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971; Hooker v. Hooker, 41 App. 235, 58 N. Y. Supp. 536; Horsfield v. Black, 40 App. Div. 264, 57 N. Y. Supp. 1006; Vernon v. Vernon, 53 N. Y. 351. The trust of specific property is not invalid under the doctrine of Carpenter v. Cook (132 Cal. 621, 84 Am. St. Rep. 118, 64 Pac. 997), as, unlike that case, the trust here does not make the payment of the expenses which are claimed to be accumulations a trust purpose. Even if the trust of specific property were invalid, the devise in remainder would be unaffected: Civ. Code, secs. 741, 742, 767. The estate of the mother and daughter in the property covered by the specific trust is a vested and not a contingent remainder: Civ. Code, secs. 689, 690, 693-695. Even if the trust of the specific property were void, the remainder of mother and daughter would be accelerated merely and not defeated: Underhill on Wills, sec. 878; 24 Am. & Eng. Ency. of Law, 2d ed., 418; Hamlin v. Mansfield, 88 Me. 131, 137, 138, 33 Atl. 788; Marvin v. Ledwith, 111 Ill. 151; Fox v. Rumery, 68 Me. 121; Jull v. Jacobs, L. R. 3 Ch. D. 703, 710; Everett v. Croskey, 92 Iowa, 333, 335, 336, 60 N. W. 732; Key v. Weathersbee, 43 S. C. 414, 49 Am. St. Rep. 846, 21 S. E. 324; Norris v. Beyea, 13 N. Y. 273. Even if the doctrine of acceleration were not applicable, and if the trust of specific property were void, the estate devised would fall into the trust of the residuum: Civ. Code, sec. 1332; Estate of Upham, 127 Cal. 90, 92, 59 Pac. 315; Matter of Benson, 96 N. Y. 499, 509, 48 Am. Rep. 646. If the doctrine of acceleration were not applicable, and the trusts, both of the specific property and of the residuum, were invalid, the testator would be held merely to have died intestate as to the intermediate estate, but not as to the estate in remainder to the mother and daughter.

The trust of the residuum is valid. The payment of one thousand dollars per month provided for in the eighth para-

graph of the codicil gives the trust an active purpose: Teel
v. Hilton, 21 R. I. 227, 42 Atl. 1111; Matter of Dewey, 153
N. Y. 63, 46 N. E. 1039; In re Schneider, 71 Hun, 62, 24
N. Y. Supp. 540; United States Trust Co. v. Maresi, 33 Misc.
Rep. 539, 68 N. Y. Supp. 918.   The trust is valid and covers
all of the property, even though the estate covered by it
be more than sufficient to pay the thousand dollars per
month: Estate of Pichoir, 139 Cal. 682, 688, 73 Pac. 606;
Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971.   Even if
the trust of the residuum were invalid, the testator did not
die intestate as to the property embraced within it.   Either
the remainders to mother and daughter would be acceler-
ated, or the testator would die intestate as to the interme-
diate estate only, which intermediate estate terminates upon
the arrival of the daughter at the age of eighteen years.

Charles S. Wheeler and J. F. Bowie, for Eleanor H. Stet-
son, respondent and counter-applicant.

In construing the will the court must arrive at the inten-
tion of the testator without reference to the validity of such
intention.   The rule that testacy is preferred to intestacy
has reference only to cases of ambiguity: Civ. Code, secs.
1317, 1318, 1326; Estate of Young, 123 Cal. 343, 55 Pac.
1011; Cunliffe v. Brancker, L. R. 3 Ch. D. 399; Speakman
v. Speakman, 8 Hare, 185; Schouler, on Wills, sec. 470; 3
Jarman on Wills, 5th Am. ed., 706; Gray's Rule Against
Perpetuities, sec. 629.   The direction for payment of the
income annually by the trustees to the executors is not a
trust purpose, but a mere power: Estate of Sanford, 136
Cal. 97, 68 Pac. 494.   That the testator misapprehended the
legal effect of his language is immaterial: Estate of Young,
123 Cal. 343, 55 Pac. 1011; Estate of Walkerly, 108 Cal. 627,
49 Am. St. Rep. 97, 41 Pac. 772; Estate of Fair, 132 Cal.
546, 84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000; Hunter
v. Attorney General, [1899] App. Cas.   The direction for
the payment of one thousand dollars does not furnish a
trust purpose for the attempted trust of the residuum: Civ.
Code, sec. 1322.   One of the purposes of the trust of the
specifically devised property being void, as providing for

an unlawful accumulation, the entire trust is void: Estate
of Fair, 132 Cal. 523, 540, 541, 84 Am. St. Rep. 70, 60 Pac.
442, 64 Pac. 1000; Estate of Dixon, 143 Cal. 511, 77 Pac.
412; Estate of Sanford, 136 Cal. 97, 68 Pac. 494. The trust
to pay rents and profits to the executors, to be paid to the
beneficiaries, is not valid under subdivision 3 of section 857
of the Civil Code: "Field Code" of New York, sec. 285, subd.
3, and annotations. A trust under this section and subdi-
vision must be made dependent on the lives of the benefi-
ciaries: Downing v. Marshall, 23 N. Y. 366, 80 Am. Dec. 290.
In adopting the statute from New York, we adopted the con-
struction which Downing v. Marshall, supra, placed upon
it: Henrietta Min. Co. v. Gardner, 173 U. S. 123, 19 Sup.
Ct. 327, 43 L. Ed. 637; Sanger v. Flow, 48 Fed. 152; Coul-
ter v. Stafford, 48 Fed. 266, 270; Tucker v. Oxley, 5 Cranch,
34, 42, 3 L. Ed. 1018; Culam v. Doull, 133 U. S. 216, 10
Sup. Ct. 253, 33 L. Ed. 596; Kennedy's Heirs v. Kennedy's
Heirs, 2 Ala. 571; Armstrong's Ex. v. Armstrong's Heirs,
29 Ala. 538; Bailey's Heirs v. Bailey's Ex., 35 Ala. 687;
Tyler v. Tyler, 19 Ill. 151; Duval v. Hunt, 34 Fla. 85, 15
South. 876; Freese v. Trip, 70 Ill. 496; Bemis v. Becker, 1
Kan. 86; Commonwealth v. Hartnett, 69 Mass. 450; State v.
Macon Co., 41 Mo. 453; Coffield v. State, 44 Neb. 417, 62
N. W. 875; Everding v. McGinn, 23 Or. 15, 35 Pac. 178;
Pomeroy v. Pomeroy, 93 Wis. 262, 67 N. W. 430. The cases
of Crooke v. County of Kings, 97 N. Y. 421, and Bailey v.
Bailey, 97 N. Y. 460, are not here applicable or competent
to change the construction placed upon the statute in Down-
ing v. Marshall: Stutsman Co. v. Wallace, 142 U. S. 293,
12 Sup. Ct. 227, 35 L. Ed. 1018; Myers v. McGavock, 39 Neb.
843, 42 Am. St. Rep. 627, 58 N. W. 522. The trust created
by the second paragraph of the codicil provides for unlaw-
ful accumulations in directing payment of (1) mortgages
(Hascall v. King, 162 N. Y. 134, 143, 76 Am. St. Rep. 302,
56 N. E. 515); (2) charges on the property (Hascall v. King,
162 N. Y. 134, 76 Am. St. Rep. 302, 56 N. E. 515; Matter
of Hoyt, 71 Hun, 13, 24 N. Y. Supp. 577; Wells v. Wells,
30 Abb. N. C. 225, 24 N. Y. Supp. 874; In re Fisher, 4 Misc.
Rep. 46, 25 N. Y. Supp. 79); (3) street assessments (Mat-

ter of Rogers, supra; Hascall v. King, supra; Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443; Peck v. Sherwood, 56 N. Y. 615; Thomas v. Evans, 105 N. Y. 601, 612, 59 Am. Rep. 519, 12 N. E. 571; Cromwell v. Kirk, 1 Dem. 599, 603; Stilwell v. Doughty, 2 Bradf. 311, 317); (4) expenses incurred in making improvements on the property (Drake v. Trafusio, L. R. 10 Ch. App. 364, 366; Stevens v. Melcher, 80 Hun, 514, 525, 30 N. Y. Supp. 625). The trust being created to pay over only such rents and profits as may remain after the payment of these items which amount to accumulations, the trust is void: Carpenter v. Cook, 132 Cal. 625, 84 Am. St. Rep. 118, 64 Pac. 997; Limbrey v. Gurr, 6 Madd. 151. Section 733 of the Civil Code does not save the trust.

The trust of the residuum is a trust to distribute, and therefore void: Estate of Fair, 132 Cal. 523, 84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000; Hofsas v. Cummings, 141 Cal. 25, 75 Pac. 110. A trust cannot be created to hold property, receive the rents and profits, and pay them over as annuities. The only trust in real property for the payment of annuities permissible in this state is that provided by subdivision 2 of section 857 of the Civil Code, which is not a trust to "hold," but a trust to lease, which involves an alienation and not a holding: Hascall v. King, 162 N. Y. 149, 76 Am. St. Rep. 302, 56 N. E. 515; Hawley v. James, 16 Wend. 62. The devise in remainder after the expiration of the trust of the specific property falls with the invalidity of the trust: Moneypenny v. Dering, 2 De Gex, M. & G. 180; Cowen v. Rinaldo, 82 Hun, 479, 31 N. Y. Supp. 554; Carpenter v. Cook, 132 Cal. 621, 84 Am. St. Rep. 118, 64 Pac. 997.

COFFEY, J. John S. Doe died January 21, 1894, leaving a widow and child, two brothers, two sisters, several nephews and nieces, and other collateral kindred. He had made a will, dated January 26, 1892, and a codicil dated November 21, 1893, which were admitted to probate February 9, 1894. The entire estate was the separate property of decedent, and was appraised in 1894 at $1,383,184, and in the final account set down at $1,954,317.

The executors named in the will, his brothers, Bartlett Doe and Charles F. Doe, immediately qualified and acted jointly until January 16, 1904, when Charles died, and thereafter Bartlett acted alone until March 16, 1905, when he filed his final account and petition for final distribution to the persons entitled thereto.

To this petition the former widow, now remarried, made response, claiming that decedent died intestate as to all the property which he owned except what was disposed of by the second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh paragraphs of his will, and she asked, therefore, that there be distributed to her in fee simple absolute one-half of all his estate not included in the clauses enumerated.

The codicil confirms the will down to the twelfth paragraph, which it revokes, substituting therefor other provisions.

The paragraphs necessary to consider are here inserted.

The will contained the following provisions:

"Twelfth—The rest and residue of my estate, real, personal and mixed, of every nature and kind whatsoever of which I may die seized or possessed, I give, devise and bequeath to my brothers Bartlett Doe and Charles F. Doe, hereinafter named as the Executors of this my last Will, in trust nevertheless, to be held by them until my daughter Mary Marguerite now One year old, shall have reached the age of Eighteen years, when the same shall be distributed as follows, to-wit:

"To my said daughter, Mary Marguerite one-half thereof, and to my wife Eleanor Doe, the other half for her life, with remainder to my said daughter Mary Marguerite. Should my said wife Eleanor die before my daughter arrives at the age of Eighteen years, then the interest hereby devised and bequeathed to my said wife, to go to my said daughter.

"Thirteenth.—Should my said daughter Mary Marguerite die before she arrives at the age of Eighteen years then the interest hereby devised to my said brothers Bartlett and Charles F. Doe, in trust for my said daughter, to go to my heirs, who may be living at the time of her death, and to be by my said

brothers distributed to my said heirs, according to the Statutes in such cases made and provided.

"Fourteenth.—I hereby nominate and appoint my brothers Bartlett Doe and Charles F. Doe, the Executors of this my last Will, hereby expressly waiving the giving of any bond or bonds, for the discharge of their duties as such Executors.

"Fifteenth—I give and grant to my said Executors and Trustees full power and authority to sell and convey all or any part or portion of my said Estate, as in their judgment they shall think best, and to re-invest the proceeds from time to time to the best interest of those concerned.

"And I hereby direct my said Executors to pay over to my said wife monthly, until my said daughter arrives at the age of Eighteen years, the sum of One Thousand Dollars for the following purpose, to-wit: Five Hundred Dollars for the support of my said wife, and Five Hundred Dollars for the support and maintenance of my said daughter."

In the codicil to the will it is provided:

"First—I hereby re-publish and affirm all that is contained in said Will down to the 12th paragraph thereof, and I hereby revoke and annul all the rest and remainder thereof, to-wit: all that is contained in said Will beginning with said 12th paragraph and down to the end thereof, and in lieu of the said part and portion so annulled and revoked do make, publish and declare this Codicil to my said Will in manner following:

"Second—I give and devise to my brothers Bartlett Doe and Charles F. Doe hereinafter named as the Executors of this my last Will and Testament all my right, title and interest in and to all the certain lots, pieces and parcels of land situate, lying and being in the City and County of San Francisco State of California, and described as follows:

[Here follow the descriptions of a number of pieces of improved and unimproved real property in San Francisco.]

"In trust nevertheless for my wife Eleanor Doe and my daughter Mary Marguerite Doe. Said trust to continue during the life time of my said trustees, and upon the death of

either of said trustees the trust to continue and to be carried out and into effect by the survivor, and to terminate only on his death.

"Giving and granting unto my said trustees and to the survivor upon the death of either of them full power and authority to take possession of, improve, mortgage and convey my said interest in the said pieces and parcels of land or either of them as they may deem most beneficial to the interest of all concerned, and to invest and reinvest the proceeds received from the sale of the same from time to time as in their judgment shall be for the best interest of the beneficiaries under this trust, and annually to pay over and deliver to the Executors of this my last Will, the rents, issues and profits thereof that may remain after paying all taxes, street assessments and other charges upon the same, and costs and expenses incurred in making improvements thereon, which rents, issues and profits my said Executors are hereby required and directed to pay over as they may be received to my said wife Eleanor Doe and my said daughter Mary Marguerite Doe.

"And upon the death of the survivor or last of my said trustees and the termination of the trust thereby created, I give, devise and bequeath to my said wife Eleanor and to my said daughter Mary Marguerite all my right, title and interest in and to said pieces and parcels of property hereinbefore described, and such portion of the rents, issues and profits thereof as may remain in the hands of my said trustees, or the survivor of them undisposed of at the termination of this trust, and also my right, title and interest in and to any and all other pieces and parcels of property that my said trustees may purchase and acquire from the proceeds of the sale of any part or portion of said real estate that they may sell during the continuance of this trust, it being my will, wish and purpose that on the death of the last of my said trustees and the termination of said trust that all my right, title and interest in said trust estate shall be paid over and delivered to my said wife Eleanor and my said daughter Mary Marguerite, provided, however, that the interest hereby devised to my said wife Eleanor to be for and continue during

her lifetime, and upon her death to go to my said daughter Mary Marguerite.

"Third—The rest and residue of my estate, real, personal and mixed of every nature and kind whatsoever of which I may die seized or possessed, I give, devise and bequeath to my brothers Bartlett Doe and Charles F. Doe, hereinafter named as the Executors of this my last Will, in trust nevertheless to be held by them until my daughter Mary Marguerite shall have reached the age of Eighteen years, when the same shall be distributed as follows, to-wit:

"To my said daughter Mary Marguerite one-half thereof and to my wife Eleanor Doe the other half for her life with remainder to my said daughter Mary Marguerite. Should my said wife Eleanor die before my daughter arrives of the age of Eighteen years then the interest hereby devised and bequeathed to my said wife to go to my said daughter.

"Fourth—Should my said daughter Mary Marguerite die before she arrives at the age of Eighteen years, then the interest hereby devised to my said brothers Bartlett and Charles F. Doe in trust for my said daughter to go to my heirs, who may be living at the time of her death, and to be by my said brothers distributed to my said heirs according to the statutes in such cases made and provided.

"Fifth—My said brothers Bartlett Doe and Charles F. Doe are interested in said pieces and parcels of land mentioned and referred to in paragraph 2 hereof, and are owners thereof with me as tenants in common, our interests therein being in common and undivided, and it being the wish, purpose and intent of the several owners of said pieces and parcels of land to keep our interests therein intact and undivided during the lifetime of all and each of us, I have made the provision herein contained to accomplish that purpose, and my said brothers being like-minded have made their Wills with like provisions to effectuate the said object. Said Wills having been made upon a mutual understanding between us to the above effect.

"Sixth—I hereby nominate and appoint my said brothers Bartlett Doe and Charles F. Doe, the Executors of this, my last Will and Testament without bonds, hereby waiving the

giving of any bond or other undertaking for the faithful discharge of their duties under this Will and as Executors and Trustees hereunder.

"Eighth—I hereby direct my said Executors to pay over to my said wife monthly until my said daughter arrives at the age of Eighteen years, the sum of One thousand Dollars for the following purpose, to-wit: Five hundred Dollars for the support of my said wife, and Five hundred Dollars for the support and maintenance of my said daughter."

The purpose of testator is patent. Whether or not he has legally accomplished that purpose, is the question. For ten years the trust remained unassailed, but now it is challenged as invalid because it is contrary to the code, as (1) the term is not properly constituted, (2) the devise to the trustees "for" the widow and daughter is void, (3) the direction to the trustees to pay taxes, street assessments and other charges out of the income is a direction for an unlawful accumulation, (4) the gift of income annually is a gift of an unlawfully accumulated fund and is void, (5) the direction to the trustees to pay over the residue of the income after deducting moneys expended for purposes shown to be unlawful is void, (6) if the mode in which the testator has framed his gift fails for illegality, the court cannot provide a valid mode in order to effectuate his intent; (7) the trust to pay the residue of the income to the executor, followed by the direction to the executor to pay it to the widow and daughter, is void; (8) the subsequent limitations of the trust property fall with the illegal trust, for where valid and invalid provisions are so blended that it is impossible to separate them and give effect to the one without doing violence to the intention of the trustor, the whole trust must fall; (9) there is no devise over of the trust property in the event of the failure of the trust; (10) the gift is contingent "upon the termination of the trust"; the court cannot transmute it into a vested remainder; (11) the intended mode of passing the property has failed for illegality, and the court cannot supply a valid mode; (12) the property embraced in the void trust does not pass under the third paragraph of the codicil; (13) the trust which the testator has attempted to create in

the third and fourth paragraphs to the codicil is void (14) the trust to distribute is unauthorized by section 857, Civil Code.

We are reminded in undertaking to construe this instrument of the duty of the court to disregard the design of the testator unless it comports with the rules of law. The function of the court is to determine the intention of the testator and then to apply the canons of construction, and not to constitute a valid for an invalid devise. We are told that the best method to be pursued in such case is that in Cunliffe v. Brancker (L. R. 3 Ch. D. 399), where Sir Geo. Jessel said:

"All we have to do is to construe the instrument fairly, find out what it means, and then to apply the established rules of law to the instrument, and see what the effect will be.

"How far judges may be, or ought to be, able to defeat a rule of law of which they disapprove I cannot say. It is the duty of a judge not to allow himself to be so influenced, but to construe the instrument in a proper way, to arrive at its meaning independently of the results, and then apply the law. This has been laid down over and over again with regard to another rule of law—the rule against remoteness or perpetuity—but I do not see that, because in the opinion of the judge the one rule of law is reasonable and the other unreasonable, the rules of construction are to be altered."

Of two modes of interpreting a will, says the code, that is to be preferred which will prevent a total intestacy; but the supreme court has said that if the legal effect of the expressed intent of testator is intestacy, it will be presumed that he designed that result. If a fair interpretation of the will results in total or partial intestacy because of rules prohibiting the devises attempted, the court may not alter the construction to avoid or evade that consequence.

The first point made by respondent is that the trust is necessarily void for the reason that its term is not properly constituted, as the trust attempted to be created is measured by the lives of two persons—the two trustees—and by the life of the survivor of them, and neither of said persons had any beneficial interest in the trust whatever. It was not to cease

with the death of the widow or the daughter, but was intended to continue during the lives of the trustees, whether the daughter should die or whether the widow should die, or whether they both should die during the lifetime of these trustees. Upon this point it is argued that the meaning of the testator is manifest. The authority for this proposition is Downing v. Marshall, 23 N. Y. 377, but it seems that that decision has been discredited in later cases and declared dictum. At the time, however, that the California codifiers copied from the New York law the present code provision, that case was supposed to be sound, and, it is asserted, should be received as controlling in this court, for it is a general canon of construction that if statute adopted from another state had been construed by the courts of that state prior to its adoption here, the same construction should be given ordinarily in this state, but this rule has not always been followed, and has been modified in cases, as, for example, where the courts of the state from which the statute had been taken have since altered their opinion as to its construction. The rule is not an absolute one, especially where there is but a single decision, and that subsequently discarded as authority in the same state. When, therefore, it is argued that at the time we took our statute of uses and trusts from New York, we accepted the construction given in Downing v. Marshal, the answer is acute that, as the appellate tribunal of that state has renounced that case as authority, it has no force here, and it being the sole support of respondent on this point, his contention is without basis.

It is not the wish of this court to lengthen its opinion by extracts from cases, but, so far as petitioner relies upon Downing v. Marshal, it would seem that the views of that case cannot govern here: Crooke v. County of Kings, 97 N. Y. 421; Bailey v. Bailey, 97 N. Y. 467.

These cases are substantially identical, and in the latter one, as counsel for respondent says on page 63 of brief, the judge writing the opinion saw fit "to criticise in a hostile manner the decision of Downing v. Marshall and implies that the opinion in that case relating to the lives measuring the trust was dictum."

It is worth while, perhaps, to make this criticism clear in connection with the case at bar, to quote from the opinion, which was concurred in by all the judges:

"We do not concur in the view expressed by the learned judge (in Downing v. Marshall) as to the construction of the statute cited, and upon a careful examination of the same we are of the opinion that the limitation provided is a limitation of time and not a personal one. We think that a correct interpretation of the same authorizes the naming of the lives of strangers as well as beneficiaries as the limitation of the devise. No reason exists why the lives named in a devise of this character should be confined to those who are interested in the estate, and it was the evident purpose of the statutes to confer upon the testator the power to fix such lives as he chose to designate within its terms. This is very manifest upon examination of the various provisions relating to the subject. Under the statute relating to uses and trusts, an express trust may be created 'to receive the rents and profits of land and apply them to the use of any person during the life of such person or for a shorter term, subject to the rules prescribed in the first article of this title': 1 Rev. Stats. 728, sec. 55, subd. 3. Among the rules referred to is that contained in a previous provision of the statute. (1 Rev. Stats. 723, sec. 15) which declares that 'the absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of two lives in being at the creation of the estate.' These two statutes must be considered and read in connection with each other in giving an interpretation to their meaning. The first (section 55) provides for a trust for the use of a person during the life of such person or a less period, and the second (section 15) limits the time during which the trust may be held. In the former nothing is said about beneficiaries, and, standing alone, it is not apparent that the limitation is confined to their lives. The latter section alone contains the limitation, and it is not restricted to any class of lives and embraces any lives upon which the trust created is limited. To bring a case within the rule provided for, it is not required, we think, that the lives during which the power

of alienation is suspended should be those of beneficiaries, and if the estate may be alienated absolutely at the expiration of any two lives in being at the time of its creation, the provision is complied with. To illustrate: if a trust is created to receive rents and profits and apply them to the use of four joint lives, upon the death of either, then to the use of the survivors and so on until the death of the last survivor, the trust in the case of each beneficiary is simply during his life, or for a shorter period—that is, as to the share to which he is entitled at the outset it is during his life. If he survives either of the other beneficiaries, then he has an additional portion during the remainder of his life. But the trust would be void as it would suspend the power of alienation for more than two lives. If, however, a condition be added to the trust that in any event it shall terminate upon the death of two persons who are strangers to the trust, then the rule referred to is complied with. In that case in no event can the power of alienation be suspended beyond these two specified lives. Upon the death of the survivor of the two strangers named, although all the beneficiaries be living, the trust estate terminates. The trust, then, while it can only exist during the lives of the two strangers, is also for the life of each beneficiary subject to be terminated by the death of the lives named during his or her life. Its continuance is not dependent upon the lives of the beneficiaries, but upon the lives of strangers. When they are ended, the two lives named have passed away and the limitation ceases. The fact that a number of persons are to be benefited under the trust during the lives of the strangers named does not create a trust beyond two lives in being contrary to the statute. It follows that the limitation contained in the sixth clause of the testator's will was not a violation of the statute, and that the provisions therein were valid, and the same should be upheld.

"Since the foregoing was written, the cases of Crooke v. County of Kings and Crooke v. Prince, which were first argued before this court in the month of June, 1883, have been heard upon a reargument. These cases involved the construction of the provisions of a will where a trust was created which depended upon the life of a stranger named therein.

No question was made on the argument that the provision referred to was invalid upon the ground that the trust created depended upon the life of a person who was not a beneficiary, and a reargument was ordered upon another and a different question. Upon the last argument, however, the question now considered, which was previously overlooked, was fully presented and the court arrived at the conclusion that a trust, of the character referred to, was valid, and not in violation of the statute. The subject is fully considered in the opinion of the court by Finch, J., and it disposes of the question presented in the case at bar. As that authority is directly in point, it is decisive in this case": Bailey v. Bailey, 97 N. Y. 467.

Counsel for respondent rely absolutely upon Downing v. Marshall, and quote this passage to illustrate this point:

"But, although trusts to receive and apply rents and profits may be created under the statute of uses and trusts, the one in question is not constituted in the manner which that statute prescribes. The application of rents and profits must be 'to the use of any person during the life of such person, or for any shorter term': 1 Rev. Stats., p. 728, sec. 55, subd. 3. The trust must, therefore, be made dependent on the life of the beneficiary. In this case the beneficiaries are associations, incorporated or unincorporated; while the lives on which the trust depends are those of two natural persons having no interest in its performance. Such a limitation is plainly unsupported by any construction which we can give to the language of the statute": Downing v. Marshall, 23 N. Y. 377, 80 Am. Dec. 290.

Counsel contend that section 857, subdivision 3, of the California Civil Code is even more explicit in this connection than is the section of the New York Revised Statutes cited in the foregoing extract. Subdivision 3 of section 857 of our code is identical with subdivision 3 of section 285 of the proposed Civil Code of New York, the so-called "Field Code," printed 1865, which had been revised in view of Downing v. Marshall, and counsel insist that thereby our code must be construed in the light of that decision; but we have seen that this rule is not uniform, and that our code provision,

though taken from New York, receiving there the construction claimed before its adoption here, such decision does not necessarily control; it may be persuasive, but not conclusive.

Depending upon that decision, respondent asserts that the trust here is void, for it does not rest on the lives of the beneficiaries; the widow and daughter may both die; the executors, to whom the payment of income is to be made in the first instance, may change from time to time and die, but the trust is to terminate only upon the death of the surviving trustee; but this view does not accord with the accredited authorities cited, which declare that the inherent character of the trust and its essential limitations may form an element in the construction to be given to the language creating it. As said in Crooke v. County of Kings, "that character and those limitations are such that the trust cannot exceed in duration the lives of the beneficiaries, because upon their death its purpose is accomplished, and a trust supposes a beneficiary, and so its very creation implies necessarily, without express words, a termination at such period. If, then, in creating the trust, one or two lives of persons not beneficiaries are designated as its measure of duration, it follows that such designation can never be intended to lengthen the trust beyond its possibility of existence, and that the language which confines its benefits to persons who are or may be living, sufficiently indicates an intention to end it at their deaths, unless it is earlier terminated by the close of the selected life, or lives. And when, in the present case, the vesting of the fee was fixed at the death of the trustee, the close of the selected life, that must be read and construed in connection with the other necessary limit indicated by the language declaring the purpose of the trust, and held to mean that the vesting is to take place at the end of the designated life, or at the period less than that marked by the earlier death of all the beneficiaries. We are not to gather, from the language of the will, the absurd and destructive intention to continue a trust beyond the limit implied by its own nature and inherent character, unless compelled to it by the language which will admit of no other interpretation."

The language of the trust does not necessarily bear the meaning attributed to it by respondent. We should not destroy the trust, unless there is no other recourse in interpreting the words of testator. If the words of this will can be construed to preserve its purpose, the court should not be swift to subvert it.

The intention of the testator was not to create a trust to continue beyond the life of his wife and child. Such a construction does not seem to this court reasonable. The assumption appears to have been that they would survive the trustees. Certainly the duration of the trust cannot be assumed to be beyond the lives of the beneficiaries, for it was possible that they might predecease the trustees, in which case the trust would terminate.

Upon this point, the court cannot sustain the contention of respondent.

What was the object of this trust? To pay over the rents and profits to the surviving wife and daughter. When they die, it ceases, because the object is accomplished. When the purpose for which an express trust was created ceases, the estate of the trustee also ceases: Civ. Code, sec. 871. The measure of the estate of the trustees is the necessity of the trust, and in making the provision for the payment of the income it is certain that only the mother and daughter were intended as recipients, and, therefore, the trust term could not extend beyond their existence.

Is the devise of the trustees "for" the widow and daughter void? Respondent relies upon the case of Wittfield v. Forster 124 Cal. 418, 57 Pac. 219, but after a careful reading of that case this court fails to see its application. The syllabus shows with sufficient clearness that the case cited is not analogous to the one at bar. "A conveyance of all the real and personal property of the grantor to a trustee in trust for an unincorporated association named, to have and to hold to the trustee named, 'his successors and assigns, forever,' without further specification as to the purpose of the trust, or as to the duration of the estate, or as to the nature and quantity of interest of the beneficiaries, or as to the manner in which the trust is to be performed does not create a valid trust as to the real property, within any of

the provisions of section 857 of the Civil Code, and under section 2221 of that code, the whole trust, both as to the real and personal property, is void for uncertainty." In the case here there seems to be a substantial difference. In that case there was a devise "in trust for" another. There were no trust purposes specified and no other duties imposed upon the trustee. It was a bare trust for another. In this case, while the language is "in trust for" others, the trust purposes are specified and trust duties are imposed.

Is the direction to the trustees to pay taxes, street assessments and other charges, and expenses incurred in improvements out of the income a direction for an unlawful accumulation? This point has been presented with fullness and force by counsel for respondent, who, while admitting that, generally speaking, it is undoubtedly the rule that a direction for an invalid accumulation is void only pro tanto, and passes over the income to the owners of the next eventual estate, insist that the peculiar effect of the void provision here is to render void the entire instrument. Great stress is laid upon this provision, and it is argued that assuming the power to be susceptible of being construed as a trust purpose, the trust is annually to pay over and deliver to the executors the rents, issues and profits of the trust property that may remain after paying all taxes, street assessments or other charges upon the same and expenses incurred in making improvements thereon. This is not a trust to pay over rents and profits, but only to pay over what may be left of the rents and profits after the same have been applied to the payment of the items mentioned.

Each case of this class must be considered according to its own circumstances, and the expressions of the testator should not be interpreted in a manner subversive of his intention unless that be plainly contrary to law. As was said in a case recently decided by our supreme court, Matter of Heywood, "in construing testamentary dispositions of property, it is a cardinal rule, that a liberal construction should be given to them, and all reasonable intendments indulged in, with a view of sustaining the purpose which it is disclosed the testator had in view. No particular form of expression is necessary to constitute a valid trust. It is sufficient that,

from the language used, the intention of the testator is apparent, and that the disposition in trust which he endeavors to make of his estate is consistent with the rules of law. The intent of the testator is the matter for primary consideration, and it is immaterial what method of expression is employed as long as that intention can be ascertained.''

In Hill on Trustees, 101, it is remarked that it is one of the fixed rules of equitable construction that there is no magic in particular words, and our appellate court has declared that it is, of course, ''a fundamental principle that a construction of a will favorable to testacy will always obtain when the language used reasonably admits of such construction, and that it will not be held to contain a void trust unless the invalidity of the trust is beyond question . . . . and cannot be reasonably construed otherwise'': Estate of Dunphy, 147 Cal. 95, 81 Pac. 315.

It is insisted in the case at bar that the trusts are void, being for purposes not specified in section 857 of the Civil Code, and as they are inextricably interwoven with the trust to pay the remainder of the rents, that trust falls with them.

If we are to be guided by the explicit indication of the purpose of the testator, it would be doing violence to his intention so to construe the terms of the will in the trust under consideration. He devised the specifically described properties to trustees for the benefit of two beneficiaries, his wife and daughter. The provisions clearly indicate that it was the intention of the testator that they should receive the income from the trust property.

What were these trustees to do in the management of this trust? It clearly appears that the motive was the maintenance of the minor and her mother. They were to receive the rents, issues and profits after the discharge of incidental expenses, such as are set forth. They alone are entitled to the income from the trust property, and they are entitled in due season to the corpus of the trust estate. It is argued that the direction of the will to discharge out of the income the costs and expenses incurred and incident to the administration of the trust is void, and that no matter how clearly a testator may have expressed himself in this regard, his intent cannot prevail; in other words, the essential purpose

of the trust is to be sacrificed to the incidental necessities of its fulfillment. It is the duty of the trustees to hold the property and administer it; subject to the trust, the estate is vested in them. How can they discharge their duty if they are restricted to the extent contended for by counsel? Even if this part of the clause were invalid, it is not so inextricably interwoven or so essentially a part of the trust scheme that all the other trust provisions would fall if it could not be sustained. In any event the entire income would go to mother and daughter. That is the express direction of the testator. If he authorized an invalid accumulation of a portion of that income, that provision failing the amount would necessarily be payable to them. The invalid clause is not an integral part of the scheme; it is a provision entirely separable from it; it is plain that the primary trust would be unaffected and the primary purpose of the testator fulfilled, even if this direction should be held void; but for the reasons suggested, it seems to this court, that, in the circumstances of this case, the direction is not unlawful.

It is contended that the provision for retaining the income and paying it over annually is void; but this is a mere matter of management, and it seems to this court that to accept this argument would be to carry the doctrine invoked to an extreme. Where the entire net income is distributed annually, the courts have held that there is no accumulation. The purpose of the statute is to prevent permanent accumulations, not to interfere with judicious management. The cases are numerous on this point and citations need not be multiplied.

Counsel are insistent upon the proposition that the testator did not give to his widow and his child the whole income of his estate, but only the residue after certain charges were to be paid, and that, therefore, the direction to the trustees to pay over the residue of the income after deducting moneys expended for purposes shown to be unlawful is void; and, hence, if the mode prescribed is illegal, the court cannot substitute a valid mode, no matter how obvious his intent; and, that the trust to pay the residue of the income to the executors by them to be paid to the widow, is

void; and that the subsequent limitations of the trust property fall with the illegal trust, for the reason that they are inseparably blended. These points might be judicially treated at greater length, but it would serve no purpose, since their substance has been discussed in the preceding pages. This court does not agree with counsel for the widow in the conclusions they deduce and apply from the abstract rules of law. As counsel say, the scheme of the will is perfectly clear; but they claim that the testator would not, if properly advised, have made the disposition that he did, for they believe that he would not have liked the idea that at the age of eighteen years this child would have come into the whole of this vast estate, for he manifested regard for and confidence in his widow, and it seems likely, if they could indulge in speculation, that he would have preferred in such circumstances that the mother of his child, her natural protector, should have one-half of his property. But this is speculation on the part of counsel. What testator meant is to be tested by what he said.

In the paragraph of the codicil which creates the trust embracing specific property, it is provided that, "upon the death of the survivor or last of my said trustees, and the termination of the trust hereby created, I give, devise and bequeath to my said wife Eleanor and to my said daughter Marguerite" all the property embraced in the trust, "provided, however, that the interest hereby devised to my said wife Eleanor to be for and continue during her lifetime, and upon her death to go to my said daughter Mary Marguerite."

It will be observed, therefore, that, subject to the devise of the trustees, all of the property embraced within the trust was devised to the widow and daughter, one-half to the daughter absolutely and the other half to her, but subject to a life estate in her mother. Such a devise is perfectly valid.

"A future estate may be limited by the act of the party to commence in possession at a future day, either without the intervention of a precedent estate, or on the termination, by lapse of time or otherwise, of a precedent estate created at the same time": Civ. Code, sec. 767.

Nor would the estate devised to the wife and daughter of the testator be defeated by the invalidity of the devise in trust of the intermediate estate. The rule that a future estate is not affected by the destruction of a precedent estate is recognized in the following provisions of the Civil Code:

"No future interest can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent interest, nor by any destruction of such precedent interest by forfeiture, surrender, merger, or otherwise, except as provided by the next section, or where a forfeiture is imposed by statute as a penalty for the violation thereof": Civ. Code, sec. 741.

"No future interest, valid in its creation, is defeated by the determination of the precedent interest before the happening of the contingency on which the future interest is limited to take effect; but should such contingency afterward happen, the future interest takes effect in the same manner, and to the same extent, as if the precedent interest had continued to the same period": Civ. Code, sec. 742.

Counsel for the widow argue that there is no devise over of the trust property in the event of the failure of the trust, and that the gift is contingent "upon the termination of the trust" and that the court cannot transmute it into a vested remainder, but this argument seems to be answered by saying that the testator did not contemplate a contingency such as is suggested; he must have assumed the validity of the trust and that it would terminate upon the death of his brothers, naturally anticipating that the widow and child would survive them. The event upon which the estate of the beneficiaries is limited is certain, the death of the trustees; the time is uncertain. A future interest is contingent, whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain: Civ. Code, sec. 695.

In this case neither the persons to whom the future estate is limited nor the event are uncertain. The sections of the Civil Code controlling this point may here be inserted.

A present interest entitles the owner to the immediate possession of the property: Section 689.

A future interest entitles the owner to the possession of the property only at a future period: Section 690.

A future interest is either: 1. Vested; or 2. Contingent: Section 693.

A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property upon the ceasing of the intermediate or precedent interest: Section 694.

Section 695 as above quoted.

The argument against the widow that the estate devised to the beneficiaries is a vested remainder—one vested in interest, but postponed in possession, seems to be supported by these sections.

If this be so, it follows that the surviving wife and daughter take a vested remainder in the specifically described properties.

Counsel for the widow contend that the trust declared in clauses 3 and 4 of the codicil is void, and say that these paragraphs contain the entire provisions of the trust. These paragraphs are identical with 12 and 13 of the original will, but paragraph 5 of the codicil is new. Paragraph 6 appoints Bartlett and Charles F. Doe without bonds as executors and trustees, and 7 requests to employ Daniel Titus as their attorney. Paragraph 8 follows and that is practically the final clause, and provides that the executors pay to his wife monthly, until his daughter arrives at the age of eighteen years, the sum of one thousand dollars for the following purpose to wit: Five hundred dollars for the support of his said wife, and five hundred dollars for the support and maintenance of his said daughter. Counsel argue that the relative position of these clauses raises the strongest kind of a presumption against any connection between them, and that the only rational construction of paragraph 8 is that it is an attempt by the testator to prescribe the amount of family allowance which should be paid. If, however, the provision for maintenance is to be executed, it must be out of the residuum. There is no other way of carrying out the purpose of the testator. This duty was imposed upon them as executors. It was an active duty and such as usually

pertains to the office of trustees, and such they must be deemed to be for the performance of these duties. This seems to be the essence of the authorities on this point. It does not seem to this court that the position of the clauses in the will shows that in the mind of the testator they had no connection. He certainly designed that his wife and daughter should be supported out of the estate, and recourse to the residuum was the only means by which that object could be accomplished. That was his evident purpose, and a strained construction should not be resorted to to defeat his design.

It is contended with confidence that the trust herein is to distribute and is, consequently, void, but this court cannot accept this contention for reasons already advanced. Even if this residuary trust were invalid, the effect would not be fatal to the devise to the mother and daughter. It would simply shorten the period of possession; to translate the technical terms of the law, they would arrive earlier at their enjoyment of the estate; the intermediate estate being out of the way by reason of the assumed intestacy as to that, the beneficiaries would come immediately into their own; that is to say, the daughter would have her half at once in fee, and the mother hers for life with remainder to her child.

It is said sometimes that the trust statutes should be construed rigorously, and that the law does not favor trusts of this character; but this is not the general rule of construction established by the codes. On the contrary, the rule of the code is that its provisions should be liberally construed. The interpretation of the instrument should be benignant and conservative, not destructive. Having ascertained the intent of the testator, and here it is obvious, we should not be too industrious in seeking reasons for its nullification.

This court is of opinion that the trusts created in and by this instrument are valid, and that the distribution should be decreed in conformity with the terms of the will.

The Rule Against Perpetuities is the subject of a note in 49 Am. St. Rep. 117-138.

And the Severability of Perpetuities and Forbidden Trusts is the subject of a note in 64 Am. St. Rep. 634-646.