[S. F. No. 4086.   Department Two.—June 6, 1905.]

In the Matter of the Estate of WILLIAM DUNPHY, Deceased. MARY D. FLOOD, Appellant, v. CARMEN O. DUNPHY et al., Respondents.

WILLS—CONSTRUCTION IN FAVOR OF TESTACY—TRUST TO CONVEY NOT IMPLIED.—A will is to be construed in favor of testacy, where its language will admit of such a construction, and is not to be construed to create an invalid trust to convey by implication, where its words do not clearly express the intent to create such a trust, and cannot be reasonably construed otherwise.

ID.—WORDS OF DEVISE TO REMAINDERMEN—DIRECTION BY WILL OF BENEFICIARIES.—A will providing for investment in real estate and distribution of income by trustees, which contains no express direction to them to transfer and convey the principal estate, but, in relation thereto, use the words "shall go to" certain beneficiaries or heirs provided for, sufficiently expresses words of devise to remaindermen; and the fact that it merely conditions such words

of devise of part thereof, in case a share corresponding to income paid respectively to a wife, son, and daughter, shall not be "transferred and distributed" as the wife or daughter may by will direct, or "paid" as the son may by will direct, contains no illegal trust to convey.

ID.—VALIDITY OF APPOINTMENT BY WILL—TITLE OF DEVISEES.—Without determining the question of the validity of the appointment by will, if it is valid, the will vests the title in the heirs designated by devise, subject to be divested by a valid appointment, and the title remains in them if no appointment is made, or if there be no legal authority to make it.

ID.—PROVISION FOR SUPPORT OF GRANDDAUGHTER—CERTAINTY.—A pro-. vision for a sufficient sum out of one fifth of the income for the support and maintenance of a granddaughter during her minority is sufficiently ascertainable by a court to compel its payment, and is not void as leaving it discretionary, nor is it void because the one fifth of the income is to be applied as directed by a daughter who is named as one of the trustees, and who is guardian of the granddaughter.

ID.—PROVISION FOR SALE AND REINVESTMENT—VALIDITY OF TRUSTS.—A provision for the sale of outside personal and real property, and the investment of the proceeds in San Francisco real estate, the income of which is to be applied as directed, makes the property mentioned in the will, under recognized equitable principles, to be considered as San Francisco real property, and it is sufficient that the trusts in relation thereto are valid under section 857 of the Civil Code.

ID.—PROPERTY SITUATED IN NEVADA—EVIDENCE OF NEVADA LAW NOT PREJUDICIAL—PRESUMPTION.—The trust being valid under the laws of California in respect of property in Nevada, which was to be sold and invested in San Francisco real estate, evidence to show that the trust is valid under the common law in force in Nevada, if at all applicable, could not prejudice the appellant. If such evidence were rejected, it would be presumed that the law of Nevada is the same as the law of California, which would not alter the result.

ID.—COMMUNITY PROPERTY—DIVISION OF ESTATE—ELECTION BY WIDOW —ESTOPPEL—CHANGE BEFORE DISTRIBUTION.—Where the will divides the estate into fifths, of which the widow has one, on condition that if she elects one half of the community property she shall have no other part, and the remainder shall be divided into fourths to go to the remaining four beneficiaries, on like terms and limitations, as applied to fifths, but the will does not fix the time for such election, and leaves the extent of the community property in great doubt, and open to litigation, the widow is not precluded or estopped by a written statement filed before trial that she elected to take half of the community property from making a different election at any time before final decree of distribution, if she should find it clearly to her interest to do so.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Myrick & Deering, for Appellant.

Lloyd & Wood, Bishop, Wheeler & Hoefler, and Charles S. Wheeler, for Jennie C. Dunphy, Respondent.

McFARLAND, J.—The plaintiff is the daughter and one of the heirs at law of William Dunphy, deceased; the other heirs of said deceased are the defendants, Carmen O. Dunphy, his surviving wife; Jennie C. Dunphy, another daughter; James C. Dunphy, a son; and Viola Piercy, a minor child of a deceased daughter of said decedent. The defendant, Jennie C. Dunphy, is guardian of said Viola. This action was brought by plaintiff under section 1664 of the Code of Civil Procedure, for the purpose of having the rights of all persons claiming heirship, ownership, or interest in the estate of said deceased judicially ascertained and determined. The judgment of the superior court was adverse to plaintiff; and from the judgment and an order denying her motion for a new trial she appeals. The deceased left a will by which he created, or attempted to create, a trust. Appellant contends that this trust is void for reasons assigned; respondents contend that it is valid; the decision of the court was that the trust is valid; and the main issue in the case is whether or not that decision is right.

By the will a few bequests are given to some religious and charitable societies which need not be considered; and the defendants Carmen and Jennie C. are appointed executrices without bonds. The parts of the will which present the main issue on this appeal are as follows:—

"I give, devise and bequeath to my wife Carmen Ovil Dunphy and my daughter Jennie C. Dunphy all my property and estate real and personal wherever situate to have and to hold to them or the survivor of them in trust for the uses and purposes hereinafter named. . . . My said trustees shall convert all my personal property in the county of Monterey, state of California, into cash and all my personal and real

CXLVII. Cal.—7

property in the state of Nevada shall also be sold by them for cash as soon as practicable for the best price obtainable; . . . and they shall invest the proceeds of such sale in real estate in the city and county of San Francisco, state of California, improved or unimproved; if unimproved sufficient money shall be retained to improve the same, and shall be so used as that the property be made to bring in a reasonable revenue; my object being to have all my property invested in real estate in such a way that it will produce a steady and reasonable income. The net income of my whole estate after paying all taxes, expenses and outlays of every kind, shall be divided into five equal shares or parts; one fifth of said income shall be paid quarterly to my wife during her life, and upon her death one fifth of the principal of my estate shall be transferred and distributed as she may by will direct, if she shall have made no direction said one fifth shall go to my heirs at law.

"One fifth of said income shall be paid quarterly to my daughter Mary Flood during her life. Upon her death one fifth of the principal of my estate shall go to her children, and if she leaves no child said one fifth shall go to my heirs at law.

"One fifth of said income shall be paid quarterly to my son James C. Dunphy during his life, and at his death one fifth of the principal of my estate shall be paid as he may by will direct; if he shall have made no such directions, then such fifth interest shall go to his children; and if he shall leave no child, it shall go to my heirs at law.

"One fifth of said income shall be paid quarterly during her lifetime to my daughter Jennie C. Dunphy; at her death one fifth of the principal of my estate shall be transferred and distributed as she may by will direct, and if she shall have made no such directions it shall go to her children, and if she leave no child it shall go to my heirs at law.

"One fifth of said income shall be paid to my daughter Jennie C. Dunphy to be applied as follows: so long as my granddaughter Viola Carrie Carmen Piercy shall remain in the custody of my family during her minority a sufficient sum out of said fifth shall be applied to the support and maintenance of my granddaughter. The residue of the said one fifth income shall be paid to my wife and three children until

my said granddaughter attains the age of twenty-one years after which time the said one fifth income less the sum of ten thousand dollars expended by me in procuring the custody of her person, shall be paid to her quarterly during her life. . . . At the death of my granddaughter one fifth of the principal of my estate shall go to her children, and if she leave no child to ·my heirs at law. . . . To my said executors and trustees I give full power and authority to make any and all sales and investments and outlays without applying to any court or judge for leave to do so.''

The principal contention of appellant is, that by this will the testator undertook to create an invalid trust to convey real property to beneficiaries; that its terms are in this regard substantially the same as those of the attempted trust which was held void in the *Estate of Fair*, 132 Cal. 533; 60 Pac. 442; 64 Pac. 1000;[1] and that the said Fair case is determinative of the question here under discussion in favor of appellant. We do not think that this contention is maintainable.

Of course, it is a fundamental principle that a construction of a will favorable to testacy will always obtain when the language used reasonably admits of such construction, and that it will not be held to contain a void trust unless the invalidity of the trust be beyond question. And, therefore, it will not be held that a will creates an unwarranted trust to convey unless its language clearly shows an intent to create such a trust, and cannot be reasonably construed otherwise.

Now, in the. Fair case it was held by the court that the testator devised all his property to his trustees and provided no way by which it could vest in any other person except by a conveyance by said trustees, and, moreover, clearly expressed his intent that it should so vest only by a conveyance by the trustees. The only words used on the subject in that will constituted express directions to the trustees to ''transfer and convey.'' That express direction was used many times, and, in the opinion of the majority of the court, the will contained no language that could possibly be construed into a direct devise to the beneficiaries or any intent to make such devise, and that, on the contrary, it clearly appeared that he did not intend to make such a devise, but did intend that no title should pass to a third person except by a con-

[1] 84 Am. St. Rep. 70.

veyance by the trustees. All that there was in the will on the subject was repeated directions to his trustees to "transfer and convey." With respect to this question now under consideration the will involved in the case at bar is very different from the will of Fair. As to two fifths of the property no question is raised; Mary Flood is to have one fifth of the income during her life, and upon her death one fifth of the principal is to "go to" her children, or if she leaves no child then it is to "go to" the testator's heirs at law, and upon the death of Viola Piercy another fifth is to "go to" her children, or if she leaves no child, to the testator's heirs; and the words "go to" are usual and sufficient words of devise. The question arises only as to the other three fifths. With respect to the James C. Dunphy fifth the words used are "at his death one fifth of the principal of my estate shall *be paid* as he may by will direct; if he shall have made no such direction, then such fifth interest shall *go to* his children, and if he shall leave no child, it shall *go to* my heirs at law." As to the Jennie C. Dunphy fifth the words are "at her death one fifth of the principal of my estate shall be transferred and distributed as she may by will direct; if she shall have made no such direction it shall go to her children, and if she shall leave no child it shall go to my heirs at law"; and the language is the same as to the Carmen fifth, except that there is no provision for her children—the principal, if she shall make no disposition by will, "shall go to my heirs at law." Now, with respect to these last-named three fifths, there is no direction whatever to the trustees to convey the property to the remaindermen and no direction to them at all upon that subject. There is nothing in the language used (as there was in the will of Fair) which necessarily means that title could pass only by a conveyance by the trustees, or which embarrasses the court in upholding the will by construing the language as constituting valid devises and not an invalid trust to convey. In each of the three cases, in the latter part of the language, clear words of direct devise—"go to"—are used; and to support appellant's contention it must be rigidly held that prior words—in two instances "shall be transferred and distributed," and in the other "shall be paid"—necessarily mean that the title to the property could pass only by the trustees' conveyance. The word "distributed" is not a tech-

nical word in conveyancing and is not usually found in deeds. If it have any legal technical meaning, it has such meaning with reference to decrees of distribution in probate courts. The use of this word, therefore, contains no intimation of an intent to create a trust to convey, or that the testator supposed that a conveyance by the trustees was necessary to pass title. Neither does the word "transfer" necessarily mean a passing of the title to land by a trustees' conveyance, and it would not have that meaning even if there had been a direction to the trustees to transfer. And the words "shall be paid," while inapt as applied to real property, simply mean, unless we are to defeat the testator's will by holding them to have no meaning, that the property is devised to the remaindermen. There is nothing in them implying a conveyance of the title by the trustees. The contention of appellant that because the property is devised in the first instance in trust to trustees, therefore it could be "distributed," or "transferred," or "paid" only by a conveyance executed by them, and that therefore the will must necessarily be construed as an invalid trust to convey, is not maintainable. A trustee takes only such estate as is necessary for the performance of his trust, and it terminates when the trust ends. Of course, as the trustees would be in possession of the property at the time of the death of any one of the persons named, they would have to transfer it by delivering possession thereof to the remaindermen. This would be so even in the case of Mary Flood or Viola Piercy, where the only words used are shall "go to."

The words used in the will are not all very apt; evidently different phrases are sometimes employed to express the same thing; but considering all the language together, and each part with reference to the context, it clearly enough appears that the testator intended to make, and did make, direct devises to the remaindermen. And certainly the will should not be construed as creating an illegal trust by implication; such an illegal trust must clearly and necessarily appear before the will, for such reason, can be upset.

The foregoing determines the main question in the case, and the purpose of the action was evidently to have that question determined. Some other points, however, are made by appellant, and we will notice them briefly.

It is contended that the provisions that James C. Dunphy and others may direct by will to whom certain fifths of the property shall go are invalid. It may be said that section 781 of the Civil Code, which provides that "A general or special power of appointment does not prevent the vesting of a future estate limited to take effect in case such power is not executed," as well as some other code provisions, seems to contemplate the validity of the provisions of the will in the case at bar now under discussion. However, as this question is involved in other cases, we will not here definitely determine it; for the invalidity of these provisions, if conceded, would not invalidate the devises to the heirs. By the will the title vests in the heirs subject to be divested by a valid appointment; and the title remains in the heirs if no appointment shall have been made, or if there be no legal authority to make such appointment.

It is contended that the provision to pay an income for the support of Viola Piercy is discretionary, and therefore void, under the rule in *Estate of Sanford,* 136 Cal. 97; 68 Pac. 494. But the point is not tenable. The language is, that "a sufficient sum out of said fifth shall be applied to the support and maintenance of my granddaughter" during her minority. Under this language a court could at any time ascertain the amount necessary for the purpose stated and compel it to be devoted to that purpose. In the Sanford case the language was, that the trustees were to apply an income to the support of certain persons "to such extent" as "in their judgment may be proper"; and was held void because it clearly left to the discretion of the trustees what amount of the income, if any, should be applied. The case at bar is, in this respect, within the decision in the *Estate of Reith,* 144 Cal. 314; 77 Pac. 942. Nor is the provision void because the income is to be applied to Viola's support by Jennie C. Dunphy. Viola was a member of the latter's family and her ward, and the guardian was the proper person to provide for the ward's support. Section 857 of the Civil Code expressly provides for a trustee to receive the income of real property and apply it to the use of any person for himself or his family; and even if the will is to be construed as making Jennie C. the sole trustee as to this one fifth of the income, such construction would not invalidate the provision.

The point is not tenable that the trust in question is generally not one permitted by the code. The property mentioned in the will is, under well-recognized equitable doctrine (1 Pomeroy's Equity Jurisprudence, 2d ed., p. 371), to be considered as San Francisco real property, and the trusts in relation thereto are among those stated in section 857 of the Civil Code.

It is contended that the court erred in allowing respondents to introduce in evidence the constitution and statutes of the state of Nevada, the evidence showing that there was in that state no constitutional or statutory provision on the subject of an express trust of real property and that the common law of England is in force there. But whether or not the admission of this evidence was erroneous, the appellant could not have been prejudiced by it. The trust in question is, as we have held, valid under the law of California; the evidence objected to merely showed, unnecessarily perhaps, that it would also have been valid under the laws of Nevada, if indeed those laws were in any sense applicable to the case; but if the evidence had been rejected, then the presumption would have been that the law of Nevada was the same as the law of California, and the result would have been exactly the same.

There is only one more point that need be noticed. The testator stated some facts in his will which left it very doubtful how much of his property is his separate property, and how much, if any, is community property, and it is evident that the determination of that question would involve serious litigation. By the will the estate is divided into five fifths, as above stated, upon the condition that the wife will take one fifth under the will, and will not claim one half of the community property; and it is provided that if she elects to assert her right to one half of the community property, then the balance of the property shall be divided into four parts, and shall go in fourths to said Mary Flood, James C. Dunphy, Jennie C. Dunphy, and Viola Piercy, "on the same terms, conditions, provisions, and limitations, as provided in the divisions of fifths of my estate," and before the time of the trial of this case the surviving wife, Carmen, did file a written statement that she claimed one half of the estate as community property. The court did not find that said Carmen

had finally elected not to take under the will, but to claim one half of the community property, and held that she had until the time of distribution to make her final election. Appellant contends that this finding and decision were erroneous; that the court should have made a finding on the question, and should have found that the wife had made a final election not to take under the will, but to claim the one half of the community property; and that, for these reasons, the judgment should be reversed. There was a stipulation of the parties by which it was "agreed that all questions as to whether the whole or any part or portion of the estate of William Dunphy, deceased, was at the time of his death community property, shall be excluded from consideration and decision by the court at this time." The findings and decree fully provide, in detail, for the proper distribution of the estate whether the widow shall or shall not finally elect to take under the will; so that the only question here involved is whether or not the court should have found that the wife had finally and conclusively elected not to take under the will, and should have entered a decree to that effect, which would have been final and binding forever upon her and her successors in interest; but we do not think that the court erred in not so finding and decreeing. There is no provision in the will as to the time when the widow shall make her election; and there is no provision in the laws of this state that we know of prescribing any time within which such an election must be made. Of course, a final decree of distribution would be conclusive on the subject, but clearly—so far as any mere limitation of time is concerned—the election may be made at any time before such decree, unless the party shall have done some act to which all the elements of an estoppel apply. In the case at bar the only act done by the widow which is relied on as precluding her from making her election before distribution is her said written statement that she intends to assert her rights in the property as community property. But considering the condition of the estate here involved, the difficulty of ascertaining what part, if any, is community property, and the danger of the widow getting nothing out of the estate if she abandons her right under the will, we think that the court was right in not forever precluding her from changing her mind if after further investi-

gation and knowledge on the subject she should find it to be clearly her interest to do so. Under the will she gets a large interest in a very valuable estate; while under her claim to community property she might not get anything; and as courts should always be careful to guard the interests of widows in the estates of their deceased husbands, she should not be rigidly bound by her first impressions as to what course would be advantageous to her. And there is here no principle of estoppel involved; the objection being the mere technical one that she should be inexorably bound by a statement which has not caused any other person to do anything detrimental to his interest. No authorities have been cited where the facts are exactly like those in the case at bar, although the following cases, cited by respondents, are somewhat in point: *Garn* v. *Garn*, (Ind.) 35 N. E. 394; *Evans's Appeal*, 51 Conn. 436; *Ward* v. *Ward*, 134 Ill. 417; 25 N. E. 1012. No California cases have been cited, and upon our own examination we have discovered none exactly in point, although in several it is assumed that the election may be made at any time before distribution; and in *Estate of Smith*, 108 Cal. 120; 40 Pac. 1039, it is said: "Before the widow can be denied her right to elect upon *distribution* it must be found that, with the knowledge of her rights by unequivocal acts evincing her intent, she has so dealt with the property left her by the will that it would be inequitable to permit her to avoid these acts and disclaim her intent." Our conclusion is, that the finding and decree of the court on this subject are right.

The judgment and order appealed from are affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.