## Celenza's Estate.

Argued April 27, 1932. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Francis Shunk Brown,* with him *Carlos Berguido, Jr.,*
and *Ira Jewell Williams,* for appellant.—A widow's
election to take against her husband's will may not be

exercised by another under a power of attorney, where the widow is sui juris and not under any disability: Robert's Est., 82 Pa. Superior Ct. 251; Smith's Est., 16 Del. Co. 186; Beck's Est., 265 Pa. 51; Kester's Est., 23 Luz. 82; Crozier's App., 90 Pa. 384; Minnich's Est., 288 Pa. 354; Salomon's Est., 297 Pa. 299; Daub's Est., 305 Pa. 446; Wilson's Est., 297 Pa. 348; Com. v. Risser, 3 Pa. Superior Ct. 196.

When the law directs an act to be done, or a condition to be performed for the purpose of conferring a right, that right cannot be acquired if the act is left undone, or the condition is not performed: Com. v. Powell, 256 Pa. 470.

The power of attorney executed in the instant case is not sufficient.

The right of election is a right given to the surviving widow, as such, and is independent of administration. It is a personal right, as distinguished from a property right, because it does not pass to the widow's personal representatives, if she dies before exercising it: McCutcheon's Est., 283 Pa. 157; Roberts's Est., 82 Pa. Superior Ct. 251; Anderson's Est., 185 Pa. 174; Ludwick's Est., 269 Pa. 365.

The widow has forfeited her right to share in the estate by reason of her desertion: Beck v. Beck, 163 Pa. 649; Heilbron v. Heilbron, 158 Pa. 297; Bauder's App., 115 Pa. 480.

The accountant has not been properly surcharged with the items in the adjudication.

There was no competent proof of the value of the property included in the surcharge.

Counsel for accountant was not properly permitted to cross-examine the witness, Dezii, on whose testimony the surcharge was based: Alford v. U. S., 282 U. S. 687.

*E. Spencer Miller*, for appellee.—The widow has exercised validly her election to take against her deceased husband's will: Com. v. Brown, 23 Pa. Superior Ct.

470; Phila. v. Meighan, 15 Pa. Dist. 10; Roberts's Est., 82 Pa. Superior Ct., 251; Kreiser's App., 69 Pa. 194; Woodburn's Est., 138 Pa. 106; McCutcheon's Est., 283 Pa. 157.

The testator deserted his wife at their home, in Italy, leaving her without support for herself and their child some three years old, and has always maintained this desertion and neglect. She does not appear to have been in any fault: Sigrist's Est., 13 Pa. Dist. 735; Balmforth's Est., 13 Pa. Dist. 222; Terry's Est., 55 Pa. 344; Braum's Est., 90 Pa. Superior Ct. 448; Wright's Est., 5 Pa. C. C. R. 228; Spence's Est., 5 Pa. C. C. R. 494; Grieve's Est., 165 Pa. 126; Bowman's Est., 301 Pa. 337; Angier v. Angier, 63 Pa. 450; Horn v. Horn, 17 Pa. Superior Ct. 486.

The accountant, though represented by counsel, was grossly disregardful of her duty to secure the assets of the estate.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1932:

There are four questions to be decided on this appeal: (1) May a widow's election to take against her husband's will be exercised by her attorney-in-fact? (2) If so, may it be done under a power of attorney in general terms, not specifically conferring authority to elect? (3) Were such surcharges made against the executrix based upon sufficiently satisfying testimony? (4) Has the widow forfeited her right to share in her husband's estate by desertion?

The decedent Michael Celenza, an Italian by birth, naturalized here, died April 30, 1929, leaving a will dated January 10, 1929, of which he appointed Grazia Ruccia executrix. She is the appellant in her own right and as executrix.

The decedent married Concetta Basilico in Italy in 1898. They had one son, now dead. Celenza emigrated to America in 1902. His wife and child did not accompany him. Some correspondence took place between

husband and wife after his arrival here, which apparently continued into the year 1906. He requested her to come to the United States, but furnished her with no money to do so. He failed to support her and she and her child lived on the charity of relatives. In 1908 he began living meretriciously with Grazia Ruccia, the appellant, and continued to do so until he died. He was engaged in the junk business. Grazia Ruccia is the owner of the property in which the business was carried on.

The orphans' court decided that no desertion by the wife had been established. Without reviewing the testimony on this phase of the same, all of which we have read, it is sufficient to say that we agree with the court's conclusion that the desertion was by the husband, not by the wife. When a man leaves a wife and child in Europe and a few years thereafter forms a connection with another woman here, living with her as husband and wife, without divorcing the spouse across the water, he carries a heavy burden to establish that the wife he left behind deserted him: Mallory's Est., 300 Pa. 217. "Wilful and malicious desertion [is] not to be inferred from a refusal on part of the wife to cross the ocean and join a husband who had broken up their household establishment and emigrated to America": Angier v. Angier, 63 Pa. 450, 460, citing Bishop v. Bishop, 30 Pa. 412. Where the family relationship is broken through the fault of the husband, the widow's exemption will be approved: Grieve's Est., 165 Pa. 126, 128. It follows, from the finding of the court below that there was no desertion by the wife, that she is entitled to her exemption.

In his will the decedent gave to Grazia Ruccia, described as "my beloved companion," the "profits" of his business and a house; also whatever "movable" personal property he had in Philadelphia, out of which she was to pay $2,000 to Giuseppe Ruccia. There were further dispositions made to take effect after the death of Grazia

Ruccia, and of property in Italy, with which we are not concerned at this time. He provided that his wife Concetta should get all the property and ground which he owned in the town of Gissi in Italy, where she resides, and from his property in America she should get the sum of two dollars "because after me sending for her several times to come to this country of North America, she always refused to come."

Following the death of her husband, the wife, who resided in a small town in eastern Italy, and is illiterate, executed a power of attorney to Diminico Basilico, a resident of Pittsburgh, authorizing him to act in her behalf in matters pertaining to her husband's estate. This letter of attorney is in Italian and there are varying translations of it in the record. As we understand, the one marked Exhibit "B" is now agreed by counsel for both parties to be the correct one. Acting under the authority of this document, the attorney-in-fact elected in the widow's behalf to take against the will. This election gives rise to the first question before us. Can an election be made by an attorney-in-fact or must it be by the widow in person?

Section 23 (b) of the Wills Act of June 7, 1917, P. L. 403, 416, as amended by the Act of April 2, 1925, P. L. 117, (20 P. S. section 262) is thus worded: "A surviving spouse electing to take under or against the will of the decedent, shall, in all cases, manifest the election by a writing signed by him or her, duly acknowledged before an officer authorized by law to take the acknowledgement of deeds, and delivered to the executor or administrator of the estate of such decedent within one year after the issuance of letters testamentary or of administration. Neglect or refusal or failure to deliver such writing within said period shall be deemed an election to take under the will." Section 23 (c) of the act provides that: "No payment from the estate of such decedent, except the exemption allowed by law to the widow, shall be required to be made to any surviving

spouse unless his or her election shall have been first duly executed, acknowledged, and delivered as provided in clause (b) of this section." It is the contention of appellant that as the election was not signed by the widow, it is of no avail and she is bound by the terms of the will. This we think too narrow and literal a construction of the act. Situations arise in which a widow cannot sign herself, as where she is a lunatic (Kennedy v. Johnston, 65 Pa. 451; Arnold's Est., 249 Pa. 348) or where she is a minor or by reason of extreme illness or absence in distant parts, cannot; but with an authorized attorney-in-fact on hand she can sign. We can see no valid reason why she may not delegate to an attorney-in-fact the signing of the paper declaring her election not to take under her husband's will when she may thus execute many writings equally important. It has been held on numerous occasions that the right of election is personal, but in the sense that it is for the benefit of the surviving spouse alone, and not for that of any third party, as, for instance, the heirs or representatives (McClintock's Est., 240 Pa. 543; Roberts's Est., 82 Pa. Superior Ct. 251; Arnold's Est., supra); or for the benefit of creditors (Fleming's Est., 217 Pa. 610). See also Crozier's App., 90 Pa. 384. It is a personal right as distinguished from a property right, not necessarily a right to be exercised only by direct personal action. The main purpose of the legislation requiring the filing of an election to take under or against a will is to give accurate information to the executor of the purpose of the husband or wife, so that a proper adjustment of the assets can be made: McCutcheon's Est., 283 Pa. 157, 161. "The manifest intent [of the act] was to promote certainty in the settlement of estates:" Wilson's Est., 297 Pa. 348, 352. Our conclusion is that the signature to the election by the hand of the widow's competently appointed and qualified attorney-in-fact met the requirements of the law.

This determination brings us to the consideration of whether the letter of attorney is in such terms as to warrant the attorney's signing the election. It does not specifically authorize him to do so, but it does empower him generally to act for her in connection with her husband's estate. It deputes him "in the name of and as the representative of her the said constitutent...... that he institutes and continues to final termination all the opportune and necessary acts required by law for the liquidation and disposition of the inheritance of her husband Michael Celenza,......intervening where necessary in matters of the inheritance and incidentals thereof,.....to appear before all competent authorities, with writings......and justifiable acts......sign all manner of writings, documents and instruments,...... oppose, or recognize, heirs,......further the reclaiming of real or personal property of whatever nature they may be, and sign all species of writing......[, and] do everything which he considers necessary for the better carrying out of the power conferred upon him." We are of opinion that under these general powers given him the attorney-in-fact could validly sign the election in the widow's behalf.

We now come to the surcharges. Considering the size of the estate, they are large in amount, aggregating $10,-679.22, representing the contents of the decedent's junk establishment. The surcharge is made against the executrix because she did not take possession of and realize upon the items which went to make it up.

It was the contention of the appellant that all of this personal property which belonged to the decedent had been sold by him prior to his death to one Michele Cangi, for the sum of $400. The auditing judge found the fact otherwise and that there was no trustworthy and satisfactory evidence that such a sale had been made. Counsel for the widow then undertook to show what the personal property consisted of and its value, seeking to establish what it was by the testimony of a witness, Al-

fonso Dezii, who claimed that he had visited the place of business of the decedent three days before his death and made a list of its contents, and the value by the testimony of Angelo Dattone, who was himself a junk dealer and who asserted he was familiar with the value of junk. In the petition filed by the appellant asking for a reaudit, grave doubt is thrown on the testimony of the witness who claimed to have made up the list. An affidavit of a physician who attended him at the time he claims he made it indicates that it was physically impossible for him to have done so. So far as the witness who was called to establish value is concerned, his testimony seems to us very indefinite as to many of the articles, estimating their value in bags without certainty as to weights, and in some instances in carload lots without any other apparent measure of volume than by the eye of the other witness who made up the list and who apparently did not measure or weigh. In our opinion, a fuller opportunity should have been accorded the appellant to test the correctness of the testimony of the witness who made up the list and the knowledge and competency of the one called to establish the value of the property.

For these reasons, we remand the record to the court below in order that it may hear further testimony, if such be offered, showing what personal property in the junk establishment belonged to the decedent at the time of his death and came into or should have come into the possession of the accountant, and the value of it. After such hearing, the court may enter such further decree of distribution as it shall deem proper and just. The present decree of distribution is directed to be opened for the purpose named; costs on this appeal to be paid out of the estate.