## Celenza v. Ruccia, etc., et al.

*E. S. Miller*, for plaintiff.

*A. Friedman*, for defendants.

BROWN, JR., J., April 2, 1935.—This is a bill in equity for the partition of premises 5010-12 Lancaster Avenue and premises 5004 Thompson Street, Philadelphia. The questions involved differ with respect to the two properties, and so they will be considered separately.

### *Premises 5010-12 Lancaster Avenue*

First, as to 5010-12 Lancaster Avenue, plaintiff's claim to partition is based upon her alleged right of dower therein by reason of the conveyance of the property by her husband Michele Celenza in his lifetime to the defendant Grazia Ruccia (designated in the deed as Grazia Celenza, wife of Michele Celenza), without the joinder of the plaintiff. The defendant Grazia Ruccia claims to be the sole and absolute owner of the property because of the trust which resulted in her favor on account of her having paid the purchase money at the time when title was taken in his name, and his conveyance to her (through a strawman, the defendant Vincenze Buonano) was in execution of the trust.

On behalf of the plaintiff objection was made to the competency of the defendant Grazia Ruccia to testify as to matters occurring in the lifetime of Michele Celenza, by reason of section 5 (*e*) of the Act of May 23, 1887,

P. L. 158. This provides: "Nor, where any party to a thing or contract in action is dead . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased . . . be a competent witness to any matter occurring before the death of said party".

Plaintiff's bill, however, is brought, not in the right of her deceased husband, but in her own right. It is not based upon any right of his to the property but on her dower interest therein. In his lifetime he parted with any title which he may have had thereto, and so no right of his in or to it passed to her "by his own act". Indeed, she concedes that "this property is not part of his estate", that when he executed the deed for it in his lifetime, "that was the end of his interest", that his interest had "been severed by the deed before his death", that "by virtue of the fact that she was" his wife "at the time when the title was in his name" it was subject to her right as his wife. True, it is an estate by descent, but it is given to her by law; it is not "his right" but her right. No right of his has passed to her "by the act of the law". She is not representing any right or interest of his but is asserting her own right of dower. Besides, although the defendant Grazia Ruccia is the surviving or remaining party to the transaction, her interest is not adverse to any right of the deceased. It follows, therefore, that she was competent to testify, insofar as this proceeding is concerned, to matters occurring in the lifetime of Michele Celenza.

It appears clearly from her testimony that she bought the property with her own money; that she gave Michele Celenza the $200 for the down payment and later the $2,-650 paid in cash at settlement on September 24, 1918; that the balance of the purchase price was paid by her sub-

sequently through a building and loan association mortgage; that title to it was to be taken in her name, and when she found out that he had taken title in his name, she quarrelled and fought with him until he transferred it to her name, and that she paid the taxes and water rent. As to the source of the money which was used by her in buying the property, she testified that for 12 years she had kept a boarding-house, having eight or ten boarders, and at the same time conducting, first, a grocery store, and later, a junk shop. It is apparent that she earned sufficient money by her hard work and thrift to accumulate the amount necessary for the purchase of the property.

Michael Cangi testified that he saw her give Michele Celenza the $200 for the deposit on the purchase price of the property, and that he was present when Celenza paid this to the seller.

Silvio Giardinelli testified that the deeds from Michele Celenza to the strawman and from the latter to the defendant were executed following Celenza's statement to him that he had some trouble with her on account of putting title to the property in his name instead of hers, and that he wanted it transferred to her.

There was testimony by Nicola Aquarola that he boarded with her for several years during which she had other boarders, varying in number between five and ten; by Domenico Finelli, that she kept boarders and had a grocery store and junk shop; and by Michael Cangi that he boarded with her from about 1906 or 1907 until he went to war and then for a year after his return; that she had other boarders, and also a grocery store which she sold, a rag shop and a junk shop in her own name.

Domenico Di Filippo testified that she had an account in his bank from about 1911 to 1917, being unable to recall exactly, as the bank closed in 1925.

No testimony was presented on behalf of the plaintiff, and so that of the defendant Grazia Ruccia and her witnesses stands uncontradicted. It is "clear, precise and

unequivocal" and establishes clearly that it was her money which paid for the property, not only the down money but also that paid at final settlement, and none of it was contributed by or for Michele Celenza.

Her payment of the purchase money, without more, raised a clear resulting trust in her favor, and entitled her to have the property transferred to her upon demand. This demand having been met by the subsequent deeds, the trust was executed, and so the plaintiff Concetta Celenza has no interest in the property or title thereto, entitling her to partition thereof.

The suggestion that Michele Celenza put the property in the name of the defendant Grazia Ruccia to make evidence helpful to her to defeat the plaintiff's claim is not supported by the evidence, for very shortly before making the conveyance, he acquired title in his own name to premises 5004 Thompson Street, which title he retained in his own name for 10 years until his death. If it had been his plan to transfer all his property to her in order to secure the property to her as against the plaintiff, there is no reason why he should not have transferred the Thompson Street property to the defendant just as he afterwards transferred the Lancaster Avenue property.

### Premises 5004 Thompson Street

As to premises 5004 Thompson Street, plaintiff's right to partition is based upon her election to take against the will of her husband Michele Celenza. The validity of the election exercised by her attorney-in-fact has been determined: Celenza's Estate, 308 Pa. 186, 191-193; and so she is entitled to her share in this property under the intestate laws, which is one half.

The persons entitled to the other half, and the amount of their shares, depend upon the following provisions of Celenza's will: "Item. I give devise and bequeath unto my beloved companion Grazia Ruccia 5004 Thompson Street the profits of my business situated at 5010-12 Lan-

caster Avenue, and house at 5004 Thompson Street, all in Philadelphia, Pennsylvania, also whatever movible personal propertys shall be at the time of my death, on Philadelphia, Penna. From the said propertys she shall get the sum of Two Thousand Dollars ($2000.00) which shall go to my friend Giuseppe Ruccia residing at 931 East Avenue, Baltimore, Md. At her death the above mentioned propertys shall be divided in three equal parts to my beloved nephews and niece being them a great deal of help to me in building the business that I am in at the present time. One third (⅓) to Giuseppe Celenza of Nicola 1304 N. Farson St. Philadelphia, Pa. one third (⅓) to Giuseppe Celenza of the dead Pietro 106 Harrison Avenue, Garfield, N. J., and One Third (⅓) to Rita Celenza of Nicola married Cangi."

Although in the first sentence he devised 5004 Thompson Street to the defendant Grazia Ruccia without any qualification, in the third sentence he provided that "at her death the above mentioned propertys shall be divided in three equal parts to my beloved nephews and niece". The question is thus presented as to whether she was given the property for life or in fee simple, but this is not necessary to discuss, because she concedes that she "obtained a life estate" therein "with remainder over to" the two nephews and niece named in the will.

In the second sentence he directed that $2,000 "shall go" to Giuseppe Ruccia "from the said propertys". The properties referred to are as specified in the first sentence: (1) profits of the business; (2) 5004 Thompson Street; and (3) "movible personal propertys", and as it appears from the schedule of distribution approved by the orphans' court sur the account of the testatrix that only $113.20 has been awarded and paid to Giuseppe Ruccia, leaving a balance due of $1,886.80, on account of his legacy, the question arises whether the latter is payable out of realty as well as personalty. It appears that that was Celenza's intention, for not only in the second sentence did he use

the words "from the said propertys" but again in the third sentence he divided "the above mentioned propertys". These provisions indicate that he was referring to the three kinds of property set forth in the first sentence. True, in that sentence he used "propertys" to indicate personalty, but he qualified it with "movible personal", so that the inference is that if he had intended to limit the "propertys", to which he referred in the second and third sentences, to personalty, he would have so stated. Having so blended his real and personal property, the legacy is a charge on the former.

### Findings of fact

From the admissions in the pleadings and the proofs, the facts are found to be as follows:

1. On September 24, 1918, premises 5010-12 Lancaster Avenue, Philadelphia, more particularly described in paragraph 2 of the bill (being the first property therein referred to), which description is incorporated by reference thereto, was purchased by the defendant Grazia Ruccia with her own money, not only the down payment of $200 but also the balance of $2,650 paid in cash at the time of settlement, subject to a building and loan association mortgage, which she subsequently paid off, and none of the money for the property was contributed by or for Michele Celenza, in whose name title was taken without her knowledge and consent.

2. On October 1, 1919, after the defendant Grazia Ruccia had discovered that title to the property was in the name of Michele Celenza instead of in her name, and upon her demand, he transferred it to her through the medium of a strawman, the defendant Vencenze Buonano, without the joinder of his wife, the plaintiff Concetta Celenza.

3. Michele Celenza died on April 30, 1929, seized of premises 5004 Thompson Street, Philadelphia, more particularly described in paragraph 2 of the bill (being the

second property therein referred to), which description is incorporated herein by reference thereto, and leaving to survive him as his widow, the plaintiff, Concetta Celenza, but no child, and also leaving a last will and testament dated January 10, 1929, in which he appointed the defendant Grazia Ruccia as executrix thereof, a true and correct copy of the will being attached as exhibit A of the bill and incorporated herein by reference thereto.

4. On March 15, 1930, the plaintiff, by her attorney-in-fact Domenico Basilico, elected to take against the will.

5. The account of the executrix has been audited and adjudicated by the Orphans' Court of Philadelphia County, as of July term, 1929, no. 2679, and the sum of $113.20 was awarded, and has been paid, out of the personal estate left by Michele Celenza to Giuseppe Ruccia on account of his legacy of $2,000, leaving a balance of $1,886.80 due thereon.

6. Nicola and Antonette Celenza are the minor children and only heirs of Giuseppe Celenza, deceased, (who is referred to in the will as "Giuseppe Celenza of Nicola"), and Luigi D'Ugo is the duly appointed guardian of their estates.

### Conclusions of law

1. The payment of the purchase money by the defendant Grazia Ruccia for premises 5010-12 Lancaster Avenue, Philadelphia, raised a clear resulting trust in her favor, entitling her to have it transferred to her upon demand, and the subsequent transfer to her by Michele Celenza, in whose name title had been taken in his lifetime, was in execution of the trust.

2. The defendant Grazia Ruccia is the sole and absolute owner of premises 5010-12 Lancaster Avenue, Philadelphia, and the plaintiff Concetta Celenza, as the widow of Michele Celenza, has no title thereto or interest therein entitling her to partition thereof.

3. The bill should be dismissed as to premises 5010-5012 Lancaster Avenue, Philadelphia.

4. Title to premises 5004 Thompson Street, Philadelphia, is vested as follows:

An undivided one-half part in the plaintiff Concetta Celenza absolutely; and the remaining undivided one-half part in the defendant Grazia Ruccia for life, and upon her death, one third of said one-half part in the defendant Rita Celenza Cangi, one third in Giuseppe Celenza, son of Pietro Celenza, deceased, and one third in Nicola and Antonette Celenza, children of Giuseppe Celenza, deceased, subject to the lien or charge of $1,886.80, the balance due on the legacy of $2,000 to Giuseppe Ruccia.

5. Partition of premises 5004 Thompson Street, Philadelphia, should be made.

### Decree nisi

And now, April 2, 1935, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the bill be and it is hereby dismissed as to premises 5010-12 Lancaster Avenue, Philadelphia.

And it is further ordered, adjudged and decreed that partition should be made of premises 5004 Thompson Street, Philadelphia, between and among the several parties, plaintiff and defendants, in accordance with their several and respective interests therein, which interests are adjudged to be as follows: Concetta Celenza, one half, absolutely; Grazia Ruccia, one half for life, and upon her death, Rita Celenza Cangi, one third of said one half; Giuseppe Celenza, one third of said one half; Nicola Celenza, one sixth of said one half, and Antonette Celenza, one sixth of said one half, subject to the lien or charge of the sum of $1,886.80, the balance due on account of the legacy of $2,000 to Giuseppe Ruccia.

And it is further ordered and decreed that the case be referred to Arthur S. Minster, Esq., as master, to divide

and partition all that certain lot or piece of ground known as 5004 Thompson Street, Philadelphia, into purparts and to value the same and to ascertain the amount that shall be paid or charged thereon for owelty or which shall be paid or secured to the parties to whom no purparts can be allotted in the manner now authorized by law; and the master, after such partition and valuation has been made, or in case he shall find that the lands and tenements cannot be divided into purparts without prejudice to or spoiling the whole, and has placed a valuation thereon, shall issue a rule on all parties in interest to appear before him on a day certain to accept or refuse the said real estate at the valuation placed thereon by him, put in bids for the same or to show cause why the same should not be sold, and, on the return of said rule, shall award and allot the said lands or the said purparts to the acceptant or to the highest bidder, together with the sum to be charged thereon and payable as and for owelty of partition, and if the premises cannot be conveniently divided into as many purparts as there are parties entitled, to award and allot the amount or sum to be paid or secured to them respectively, and at the times when such payments shall be made, and the purparts out of which the same shall be payable.

The prothonotary will enter a decree nisi in the terms above set forth, and will notify counsel thereof, and of the filing of these findings and conclusions; and further, that if exceptions are not filed thereto within 10 days from the receipt of said notice a decree absolute in the sense of the decree nisi will be entered.

NOTE.—A final decree in the form of the decree nisi was entered on May 17, 1935.