15 Cal.3d 907 (1976)
544 P.2d 956
126 Cal. Rptr. 820
Estate of JOHN W. MURPHY, Deceased.
UNION BANK, as Executor, etc., Petitioner and Respondent,
v.
LISA MARIE MURPHY, a Minor, etc., et al., Claimants and Appellants; RUTH L. PERRY, as Executrix, etc., Claimant and Respondent.
Docket No. L.A. 30498.
Supreme Court of California. In Bank.
January 27, 1976.
*911 COUNSEL
G. Harold Janeway and George I. Devor for Claimants and Appellants.
No appearance for Petitioner and Respondent.
Duitsman & Hughes and Roger G. Duitsman for Claimant and Respondent.
OPINION
WRIGHT, C.J.
John W. Murphy (Murphy) died on April 29, 1971, survived by his wife Royene, whom he had married in 1942. Murphy's will purported to place all of his and Royene's community property, as well as his own separate property, into two trusts in which Royene would have life interests plus a general testamentary power of appointment in the trust that included her community property interest. The will declared, however, that "[i]f my wife elects to take the rights given her by law, she shall nevertheless be entitled to the benefits given her by this Will with respect to all property remaining subject to it." Royene survived Murphy by only eight months. When she died on December 14, 1971, she had not exercised the power of appointment and had not declared any election to accept or reject Murphy's testamentary disposition of her community property interest. Although Murphy's will had by then been admitted to probate, there had been no judicial determination of her interest in his estate.
Thereafter Ruth L. Perry, executrix and sole legatee under Royene's will, filed a "Declination to Take Under Will by Executrix of Widow" in the Murphy estate proceeding. Murphy's executor thereupon filed a proceeding to determine interests in his estate (Prob. Code, § 1080), in which statements of claim were filed by Ruth Perry and by the legatees of the remainder interests in the trusts under Murphy's will  Willard Murphy, Murphy's son by a prior marriage, and Willard's two minor *912 children (all hereafter referred to as "Murphy legatees"). After a court trial following waiver of a jury (Prob. Code, § 1081), the trial court awarded to Royene's executrix a half interest in all property of the probate estate which she claimed to be community.[1]
Appealing from this judgment (Prob. Code, § 1240), the Murphy legatees make two basic contentions, each of which we conclude must be rejected for reasons to be explained. First, they assert that Royene's estate was bound by the provisions of Murphy's will disposing of her community property interest unless she affirmatively elected to take against the will and that the right of election was personal to her and could not be exercised after her death. To the contrary, her community property interest was beyond his power of testamentary disposition and could not be subjected to the will's provisions in the absence of her affirmative election to accept its benefits as hereinafter discussed. Second, the Murphy legatees contend that the property which the trial court found to be community was acquired with the income from two farms in Kansas and certain stock that were conceded to be Murphy's separate property. As we shall explain, the separate income was not traced as a source of the assets in question and the trial court properly concluded that Murphy's legatees had failed to overcome the presumption that assets acquired by purchase during the marriage are community property.

Survival of Widow's Right to Claim Community Property Interest Against Inconsistent Provisions in Husband's Will.
(1) Following antecedent Mexican law, the rule in California has always been that a wife is entitled to at least one-half of the community property on her husband's death and the husband's testamentary power over such property is limited to the remaining half. (Prob. Code, § 201; Spreckels v. Spreckels (1916) 172 Cal. 775, 779 [158 P. 537]; Estate of Buchanan (1857) 8 Cal. 507.) Accordingly, when a husband's will describes the property which it gives to the wife and others in general terms, e.g., "all my property," without affirmatively indicating any intention to deal with the wife's community property interest, the operation of the will upon community property is confined to the husband's interest and the surviving wife is entitled to receive both her *913 half of the community property by operation of law and any interest in the deceased husband's share given her by the will. (Estate of Wolfe (1957) 48 Cal.2d 570, 574-575 [311 P.2d 476]; Estate of Gilmore (1889) 81 Cal. 240 [22 P. 655].)
(2) However, if the will expressly requires the widow to elect between the provisions for her benefit and her community property rights (Estate of Dunphy (1905) 147 Cal. 95, 103-104 [81 P. 315]; Estate of Klingenberg (1949) 94 Cal. App.2d 240, 244 [210 P.2d 514]) or if the testator purports to dispose of the wife's share of the community property and the will shows that to satisfy the wife's community property rights while giving effect to its provisions with respect to remaining property would thwart the testamentary intent (Estate of Wolfe, supra, 48 Cal.2d at p. 574; Estate of Orwitz (1964) 229 Cal. App.2d 767, 769 [40 Cal. Rptr. 545]; Estate of Roach (1959) 176 Cal. App.2d 547, 553 [1 Cal. Rptr. 454]) the wife cannot take both her community property interest and the property given her by the will but must elect between them. Identical principles may require such an election by a surviving husband between his community property rights and the provisions for his benefit in the will of his deceased wife, whose testamentary power over community property is likewise applicable to only a one-half interest. (Prob. Code, § 201; Estate of Johnson (1960) 178 Cal. App.2d 826 [3 Cal. Rptr. 408]; Kahn & Gallo, The Widow's Election: A Return to Fundamentals (1972) 24 Stan.L.Rev. 531, 532.)
In Estate of Kelley (1953) 122 Cal. App.2d 42 [264 P.2d 210], as in the present case, the wife died during administration of her husband's estate without having made an election to take under his will or to claim her community property interest against the will. The testator directed that all of "his" property be distributed to a testamentary trust in which the wife would have a lifetime interest. This provision was apparently intended to cover both halves of the community property as the will further provided that if the widow should "elect to take under the law and not under the will" the provision for the trust would be void and the estate would go to the testator's sister and nieces. The widow's executrix filed an election to take against the will and in a proceeding to determine interests in the estate was awarded one-half of the community property by an order which was affirmed on appeal.
The present will differs from the Kelley will in that instead of requiring the widow, Royene, to elect between its disposition of her community property interest and its other provisions for her benefit, it *914 provided that if she elected "to take the rights given her by law" by claiming her community property interest, she should nevertheless be entitled to benefits which the will gave her in other property. It is clear, however, that if Royene had permitted her half of the community property to become part of the corpus of a testamentary trust as provided in the will she could not also claim the same property outright. The choice between acceptance or refusal of testamentary provisions for the widow's share of the community property where refusal would not require relinquishment of rights or benefits in other property is sometimes referred to as a "voluntary" widow's election, as distinct from a "forced" widow's election in cases such as Kelley where such relinquishment is a necessary consequence of claiming community property rights. (Kahn & Gallo, supra, 24 Stan.L.Rev. 531, 533.) Survival of the right of election after the widow's death is not affected by whether the election is forced or voluntary.
(3a) Urging rejection of Kelley, the Murphy legatees argue that the will's provisions controlled the disposition of Royene's community property interest unless she affirmatively elected to take against them and that her right to so elect was a personal right which could not be exercised by her representative after her death. This is indeed the usual rule of decision in American jurisdictions in which none of the acquisitions of resident married persons constitutes community property and the surviving spouse is given a right to elect between the testamentary gifts provided by the deceased spouse's will and a statutory share of the deceased spouse's estate. The purpose of the right of election in those jurisdictions is to assure the surviving spouse of personal enjoyment of a minimum share of the property formerly owned by the deceased spouse. (Payne v. Newton (D.C. Cir.1963) 323 F.2d 621, 623; Estate of Davis (1971) 129 Vt. 162, 166-167 [274 A.2d 491]; Celenza's Estate (1932) 308 Pa. 186, 191-192 [162 A. 456]; Estate of Dalton (1975) 60 Ill.2d 451 [328 N.E.2d 257]; see Annot. 83 A.L.R.2d 1077, 1080.) This personal nature of the surviving spouse's right of election in those jurisdictions results from its being strictly construed as a limited exception to the deceased spouse's general testamentary power to control the disposition of his own property. (Cf. Estate of Bunn (1949) 33 Cal.2d 897, 900 [206 P.2d 635] (former statutory right to set aside charitable bequest strictly construed as personal to eligible relative); Estate of Hughes (1962) 202 Cal. App.2d 12, 18 [20 Cal. Rptr. 475] (same).)[2]
*915 In contrast, on the death of a married California resident the surviving spouse's half of the community property belongs to such survivor and is not subject to the decedent's testamentary disposition in the absence of an affirmative election to the contrary. The surviving spouse's interest is not a special exception to a decedent's right to dispose of his own property, provided out of solicitude for the survivor's personal comfort, but reflects a legal recognition of the survivor's right to absolute ownership of a share of the fruits of the marriage unless and until such right is voluntarily relinquished.
The circumstances under which the surviving spouse must elect between community property rights and benefits under the deceased spouse's will are essentially the same as those generally giving rise to a necessity for election whenever an instrument purports to dispose of property owned by another and also gives such owner benefits in other property. (See Noe v. Splivalo (1880) 54 Cal. 207 (testator's son's acceptance of devised property estopped him from claiming title to other property devised to third persons); Estate of Waters (1972) 24 Cal. App.3d 81, 85 [100 Cal. Rptr. 775] (surviving joint tenant's election); Tassi v. Tassi (1958) 160 Cal. App.2d 680, 685 [325 P.2d 872].) In all such cases the effectiveness of the will or other instrument to dispose of property normally beyond the maker's power of control depends on conduct of the property owner constituting an election to accept benefits under the instrument. (Estate of Smith (1895) 108 Cal. 115, 119-122 [40 P. 1037]; Estate of Klingenberg, supra, 94 Cal. App.2d 240, 244.) (4) Thus the effectiveness of a testamentary disposition of the surviving spouse's community property interest to third persons depends upon the survivor's voluntary and affirmative acceptance of the will's provisions and cannot stem from the decedent's testamentary act alone. (Estate of Carson (1965) 234 Cal. App.2d 516 [44 Cal. Rptr. 360] (construing Inheritance Tax Law).) The survivor's decision to accept or reject the will's provisions in lieu of his or her community property interest may be made as late as the time of the proceeding for distribution of the property. (Estate of Roberts (1945) 27 Cal.2d 70, 75 [162 P.2d 461]; Estate of Dunphy, supra, 147 Cal. 95, 104.) (3b) The absolute nature of the survivor's community property interest precludes treating the mere fact *916 of the survivor's death as equivalent to an election to accept the will's provisions in lieu of that interest.
The continuation after the surviving spouse's death of his or her right to claim half of the community property against conflicting provisions of the deceased spouse's will is consistent with, but not dependent upon, the vested nature of the spouses' community property rights during their married lives. Since 1927 "[t]he respective interests of the husband and wife in community property during continuance of the marriage relation" have been "present, existing and equal interests." (Civ. Code, § 5105; former Civ. Code, § 161a.)[3] Even before 1927 the wife's community property interest during the marriage, while not vested, was deemed "a much more definite and present interest than is that of an ordinary heir." (Stewart v. Stewart (1926) 199 Cal. 318, 342 [249 P. 197]; accord, Siberell v. Siberell (1932) 214 Cal. 767, 771-772 [7 P.2d 1003].) (5) But the surviving spouse's rightful claim to half of the community property on the other spouse's death stems not from the rights held during the marriage but from the survivor's vested interest existent immediately upon death unless and until voluntarily relinquished, (Prob. Code, §§ 201, 300; Logan v. Serpa (1949) 91 Cal. App.2d 818, 822 [206 P.2d 70].)[4] Language in Estate of Kelley, supra, 122 Cal. App.2d 42, suggesting that survival of the wife's rights to take her community property share against her husband's will depends upon the vested nature of her interest during the marriage is disapproved.
Other language in Kelley to the effect that the widow's executrix "was duty bound" to elect against the will (122 Cal. App.2d at p. 44) and that the widow's death eliminated any problem of election (122 Cal. App.2d at p. 45) constrains us to observe that there may be circumstances, not present here or in Kelley, under which it will be in the best interest of a *917 surviving spouse's estate to elect to accept the provisions of the will. The death of the surviving spouse does not necessarily terminate the right of such spouse's successor to do so.[5] (Cf. Prob. Code, § 202, subds. (b), (c); fn. 4, ante.)

Community Nature of Disputed Assets in Husband's Estate.
(6a) The assets which the trial court found to be community property were a three-eighths interest in the family residence,[6] real property used in the family business, shares in the corporation carrying on that business, savings accounts, stocks, bonds and an automobile. Although Murphy owned the family corporation shares at the date of marriage, the trial court found upon substantial evidence that the shares had "little if any significant value" at that date and that their added value at the time of Murphy's death was derived from advances of community assets to the corporation and from Murphy's personal services for which he was not adequately compensated by the corporation. The other disputed assets were acquired by purchase during the marriage at times when adequate community funds were available for such acquisition. Murphy also had separate income during these times but there was no evidence from which that income could be directly traced to any of the assets in dispute.
(7a) "Property acquired by purchase during a marriage is presumed to be community property, and the burden is on the spouse asserting its separate character to overcome the presumption. (Estate of Niccolls, 164 Cal. 368 [129 P. 278]; Thomasset v. Thomasset, 122 Cal. App.2d 116, 123 [264 P.2d 626].)" (See v. See (1966) 64 Cal.2d 778, 783 [51 Cal. Rptr. 888, 415 P.2d 776].) The mere fact that Murphy received substantial separate income concurrently with the receipt of substantial community income *918 does not dispel the presumption. Generally speaking there are two methods of carrying the burden of showing property purchased during the marriage to be separate: (1) direct tracing to a separate property source or (2) proof that at the time of purchase all community income was exhausted by family expenses. (In re Marriage of Mix (1975) 14 Cal.3d 604, 611-612 [122 Cal. Rptr. 79, 536 P.2d 479]; See v. See, supra, 64 Cal.2d at p. 783.) (6b) In the present case there was no proof by either method requiring the trial court to find any of the disputed assets to be other than community property.
None of the separate income was directly traced into any particular bank account or other asset. (7b) Evidence which merely establishes the availability of separate funds on particular dates without also showing any disposition of the funds is not sufficient proof of tracing to overcome the presumption in favor of community property. (See In re Marriage of Mix, supra, 14 Cal.3d at pp. 613-614.) Moreover, the trial court found that Murphy's separate income had been commingled with community funds in checking and savings accounts in his own name and in the joint names of himself and his wife and that there were no records adequate to identify any particular portions of such commingled funds as derived from community or separate property sources. Under these circumstances the commingled accounts and any assets acquired with funds withdrawn from them were properly treated as community property. (See v. See, supra, 64 Cal.2d at p. 783; Grolemund v. Cafferata (1941) 17 Cal.2d 679, 683 [111 P.2d 641]; Mason v. Mason (1960) 186 Cal. App.2d 209, 212 [8 Cal. Rptr. 784]; Pope v. Pope (1951) 102 Cal. App.2d 353, 366 [227 P.2d 867].)
Family living expenses are relevant to the issue of the community or separate nature of property acquired during marriage because of the presumption that such expenses are paid out of community rather than separate funds (Beam v. Bank of America (1971) 6 Cal.3d 12, 20 [98 Cal. Rptr. 137, 490 P.2d 257]; Estate of Neilson (1962) 57 Cal.2d 733, 742 [22 Cal. Rptr. 1, 371 P.2d 745]). Reliance upon such expenses to establish the separate nature of an asset purchased at any time during the marriage requires proof "that at that time all community income was exhausted by family expenses." (See v. See, supra, 64 Cal.2d at p. 783; italics supplied.) In the present case there was no proof of the amount of Murphy's and Royene's living expenses except evidence of general circumstances such as their living in a house that was fully paid for by 1943 and having no dependents except Murphy's son for seven years of his minority during which he attended military school for two years. *919 Moreover, it could be inferred from the evidence that during each year of the marriage there was more than enough community income to cover the married couple's living expenses.
The Murphy legatees contend that decisions placing the burden upon a spouse of establishing his or her ownership of separate property in a divorce or dissolution proceeding should not be fully applicable to the present probate proceeding where the prior deaths of both spouses precluded their testimony. It is true that in a dissolution proceeding testimony of the spouse claiming separate property may be crucial in overcoming the presumption that assets are community property. (See, e.g., In re Marriage of Mix, supra, 14 Cal.3d at p. 614.) However, the burden of establishing a spouse's separate interest in presumptive community property is not simply that of presenting proof at the time of litigation but also one of keeping adequate records. (8) "The husband may protect his separate property by not commingling community and separate assets and income. Once he commingles, he assumes the burden of keeping records adequate to establish the balance of community income and expenditures at the time an asset is acquired with commingled property." (See v. See, supra, 64 Cal.2d at p. 784; accord, White v. White (1938) 26 Cal. App.2d 524, 529 [79 P.2d 759].) Murphy had the opportunity during his lifetime to maintain records adequate for tracing the disposition of his separate income. His legatees are bound by the consequences of his declining to do so.

Exclusion of Perry Deposition
(9) Murphy's legatees contend it was reversible error for the trial court to reject their offer in evidence of the deposition of claimant Ruth Perry, Royene's executrix and sole legatee, who testified at the trial. The deposition of a party "may be used [at the trial] by an adverse party for any purpose" (Code Civ. Proc., § 2016, subd. (d)(2)) but only "so far as admissible under the rules of evidence" (Code Civ. Proc., § 2016, subd. (d)). The record does not show that the deposition contained any testimony that the trial court did not have discretion to exclude. Part of the deposition testimony consisted of the witness' inadmissible opinions and conclusions concerning matters not "[r]ationally based on [her] perception" (Evid. Code, § 800, subd. (a)) and the rest was cumulative to her trial testimony.
*920 The judgment is affirmed.
McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.
NOTES
[1] The judgment also declared that two holdings of listed common stock described in the inventory as "joint tenancy assets not subject to probate" were held in "true joint tenancy" and accordingly belonged to the estate of Royene as surviving joint tenant. This provision of the judgment is not questioned on this appeal.
[2] In Estate of Field (1951) 38 Cal.2d 151, 155 [238 P.2d 578], in the course of holding that a widow's right to contest her husband's will could be exercised after her death by her personal representative, we rejected as inapposite the will proponents' "attempt to invoke numerous cases holding that the widow's exercise of her right to elect to take under the will or by succession is a right personal to her which cannot be exercised after her death by her representative" and we expressly refrained from passing on the survivability of the right to accept or reject the provisions of an admittedly valid will. There is no indication in our opinion that any of the cases thus distinguished were from jurisdictions having a community property system.
[3] At the time of Murphy's death the spouses' community property interests during the marriage (other than the wife's own earnings and personal damages (former Civ. Code, § 5124)) were still declared by statute to be "under the management and control of the husband as is provided in [certain code sections]" (former Civ. Code, § 5105), but the wife's interest during the marriage was nevertheless vested in her (Ottinger v. Ottinger (1956) 141 Cal. App.2d 220, 225 [296 P.2d 347]). Legislation effective January 1, 1975, provides that subject to a number of conditions either spouse has the management and control of the community property. (Civ. Code, §§ 5125, 5127.)
[4] On Murphy's death Royene's vested community interest was subject to administration as part of his estate. (Former Prob. Code, § 202; Estate of Coffee (1941) 19 Cal.2d 248.) As of July 1, 1975, the surviving spouse's community interest generally need not be administered in the estate of the deceased spouse but may be so administered upon the timely written "election of the surviving spouse or the personal representative, guardian of the estate, or conservator of the property of the surviving spouse." (Prob. Code, § 202.)
[5] It is suggested that in deciding the instant case we ought to construe Probate Code section 201.7, which requires a surviving spouse having a right to take property against the deceased spouse's will under Probate Code section 201.5 to elect between taking under or against the will unless the decedent appears to have intended that the survivor take both. Section 201.5 gives the survivor rights only in property which the decedent acquired while domiciled outside California or received in exchange for property so acquired and which therefore cannot be community property (see Civ. Code, § 5110; Estate of Thornton (1934) 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343]). Although the present will of Murphy purported to deal with "quasi-community property," there is no showing that his estate included any of the property described by section 201.5. Thus section 201.7 does not apply.
[6] This interest arose from the discharge of an encumbrance during the first year of marriage by payment of a debt equal to three-eighths of the property's then value. (See Garten v. Garten (1956) 140 Cal. App.2d 489, 493-494 [295 P.2d 23].)